(No. 43020.—
JOHN ESTER, JR., Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CITY OF CHICAGO, Appellant.)

*Opinion filed April 1, 1971.*

RICHARD L. CURRY, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and RICHARD F. FRIEDMAN, Assistants Corporation Counsel, of counsel,) for appellant.

VITELL & VITELL, and ROGER F. MARITOTE, both of Chicago, (SCOTT J. VITELL, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County confirming in part and setting aside in part a decision of the Industrial Commission. An arbitrator for the Commission found that the employee, John Ester, Jr., was entitled to $51 per week for a period of 10 weeks for temporary total incapacity under section 8(b) of the Workmen's Compensation Act (Ill. Rev. Stat. 1963, ch. 48, par. 138.8(b)), plus $51 per week for a further period of 60 weeks for a 30% permanent loss of his right leg under section 8(e). (Ill. Rev. Stat. 1963, ch. 48, par. 138.8(e).) The Commission affirmed the arbitrator's decision under section 8(b), but set aside his finding under section 8(e) and instead found a 15% permanent loss of use of the right leg entitling Ester to compensation for only an additional 30 weeks. On writ of *certiorari,* the circuit court of Cook County likewise confirmed the award of 10 weeks compensation for temporary total incapacity, but set aside the Commission's finding on the extent of permanent loss of use and reinstated the arbitrator's 30% finding. The employer, the City of Chicago, has appealed the circuit court's decision under section 8(e), and the employee has cross-appealed claiming that the court erroneously confirmed the Commission's award under section 8(b). 43 Ill.2d R. 303.

On the date of the injury, March 26, 1965, Ester had been employed for six to eight weeks as a tree trimmer for

the City of Chicago, and was trimming a tree on Kostner Avenue in Chicago. As he pulled on a branch while standing on the ground, he slipped on the ice and fell against the curb—his right hip region striking against both the curb and a "big ice pack." He finished the day's work since "we were almost breaking." He appeared for work the next day, but found that he "couldn't hardly make it," and decided to see the City's doctor. He was examined, given a heating pad treatment, and returned to work that afternoon. He apparently continued to work at least part time for several days. At the time of the accident, he was 37 years old, single and had no children under 18 years of age.

At the hearing before the arbitrator, Ester testified at length, and five medical reports were introduced into evidence. The parties stipulated that all the requirements of the Act had been met, and that the only questions in dispute were the amount of temporary total incapacity and the nature and extent of the injury.

After the arbitrator made his award, both parties filed petitions for review, the employer claiming that the award was excessive and the employee arguing that it was "grossly inadequate." The case was submitted on the record, and the Commission agreed that Ester was entitled to 10 weeks compensation for temporary total incapacity, but reduced his recovery under section 8(e) because "the injury resulted in the permanent and complete loss of use of the right leg to the extent of 15% thereof."

On *certiorari,* the circuit court heard oral arguments on December 15, 1969, and on the same day set aside the Commission's decision and reinstated the arbitrator's award. Both parties have appealed.

Ester testified at the hearing before the arbitrator that although he had continued to work for several days after the accident, his condition gradually worsened until eventually "I got so I couldn't make it at all." He stated that he visited the City doctor's office approximately twice a week

from March 27 through June 1, 1965, and that the only treatment received on each such occasion was heat therapy. He also eventually consulted his personal physician who prescribed a daily sitz bath, the regular use of a heat massager, and the wearing of an orthopedic brace. Ester testified that he continued to take the daily sitz bath and use the heat massager three times a week right up until the hearing date. He also stated that he always wears the brace during the day, since "I can't make it without it." When asked whether and why he failed to report to the City doctor's office after June 1, 1965, Ester replied that he had gone there "every time they said to come back," that he had "kept every appointment they called for me," and that he had not received a request from that office to be re-examined or treated after June 1. He also stated that after the accident he did not return to the Department of Forestry and Parkways to seek work, that since that time he had not worked for anyone, and that he had not even sought other employment—the reason in each case being that he "wasn't able" and "couldn't pass a physical." He did concede, however, that he could walk, sit at the table, and drive a car. He testified further that his sister helped him around the house and that some boys cut the lawn and assisted him with the garbage.

He also testified that he had sustained a back injury in 1964 while trying to subdue a prisoner at the Cook County jail, where he was employed as a deputy sheriff. This injury necessitated a spinal fusion in April or May of that year, and he was hospitalized for a period of 27 to 28 days. He was then unemployed until he commenced work as a tree trimmer with the City. He stated that he had never filed a claim under the Workmen's Compensation Act for the 1964 injury. He further testified that in the interval between his release from the hospital in 1964 and his injury on March 26, 1965, he had no pain in either his back or his right leg. Aside from a childhood toe fracture, he said that his right

leg had never been injured prior to the 1965 accident. As a prerequisite to his employment with the City, he had been required to climb a tree "four stories high," and at that time he stated that he was "doing all right." However, he also testified that he was not given a medical examination prior to his employment with the City. Finally, he testified extensively concerning his physical condition at the time of the hearing.

We see nothing to be gained by setting out in detail the contents of the five medical reports that were in evidence. It is sufficient to say that there is evidence here from which the Commission could validly infer a 10-week period of temporary total incapacity. Ester did receive heat therapy treatments at the City doctor's office for this period. The record also indicates that the intervals between treatments increased significantly in May of 1965, and that Ester simply failed to return to that office after June 1, 1965. The record is silent on precisely why he failed to return and on precisely when his remaining disability became permanent, but the Commission could validly infer from the record that Ester was either discharged on June 1, or that on that date he was "as far recovered or restored as the character of the injury will permit." (*Arbuckle* v. *Industrial Com.* (1965), 32 Ill.2d 581, 586.) Moreover, there is conflicting evidence as to whether he was in fact able to work after June 1, and the decision on that question also properly rested with the Commission. On the record before us, we cannot say that the award under section 8(b) was against the manifest weight of the evidence.

The employer contends on review that the Commission's 15% finding for permanent loss of use under section 8(e) is also supported by the manifest weight of the evidence, and that therefore the circuit court erred in reinstating the arbitrator's 30% finding. Concerning the employee's extensive testimony regarding his physical condition at the time of the hearing, particularly his complaints of pain and

numbness in his right leg, the employer stresses the conflicting evidence in the various medical reports indicating "that if there was any permanent impairment, it was a slight limitation of motion in the claimant's back." Based on this conflicting evidence, the employer argues that "it was the Commission's duty to resolve the conflicts and determine the extent to which the claimant was entitled to compensation."

Again we find that the Commission's finding of a 15% permanent loss of use under section 8(e) is not contrary to the manifest weight of the evidence. The evidence introduced on this question is obviously conflicting. Ester testified that at the time of the hearing before the arbitrator in 1969, he still suffered from pain and stiffness in his right leg, that his leg was "dead" and "just a prop," and that he walks with a little limp. Yet the medical report of the private physician retained by the employer stated that a thorough examination of Ester on May 13, 1966, revealed that even then he was able "to walk normally without limping," that he could walk on his toes "without evidence of extensor muscle weakness of the right leg," and that the muscles in his right leg, hip and thigh were without atrophy and had "excellent tone." The Commission's resolution of the conflicts in the evidence resulted in a finding that was not against the manifest weight of the evidence, and the circuit court therefore erred in setting it aside.

The decision of the circuit court of Cook County confirming the Commission's award of 10 weeks compensation for temporary total incapacity under section 8(b) is affirmed. The decision of the circuit court setting aside the Commission's award of 30 weeks compensation for a 15% permanent loss of use of the right leg under section 8(e) is reversed, and the Commission's award is reinstated.

> *Affirmed in part and*
> *reversed in part.*