(No. 39072.—

ROBERT ARBUCKLE *et al.,* d/b/a Cedar Knoll Nursing Home, Appellants, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOSEPHINE WALDEN, Appellee.)

*Opinion filed May 20, 1965.*

BELLATTI, FAY & BELLATTI, of Jacksonville, for appellants.

JULIAN HUTCHENS, of White Hall, and ANTHONY J. MANUELE, of Springfield, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Greene County which affirmed a decision of the Industrial Commission awarding workmen's compensation benefits to claimant, Josephine Walden, for injuries sustained while employed as a cook in a nursing home. An arbitrator had awarded her 11⅐ weeks temporary total disability and an additional sum for 5% permanent and complete loss of use of the right leg. The commission, however, increased both awards, the former to 64 weeks temporary total incapacity, and the latter to 50% permanent and complete loss of use of the right leg. The employer appeals, contending that the evidence is insufficient to support either award, the specific assertions being that there was no evidence of permanent injury and that there is no evidence that the temporary total disability was more than 11⅐ weeks in duration.

Claimant experienced a severe pain in her back on March 4, 1961, as she lifted a heavy box of groceries which

had been delivered to the nursing home. She continued working that day and the following day, but on March 6 she consulted Dr. Paul Dailey. At that time she complained of pain in the lower thoracic area which radiated down into the hips and right leg. The doctor gave her pain tablets and muscle relaxants, and arranged for her to consult with an orthopedic specialist.

On March 27, 1961, and at intervals extending to November 4, 1961, claimant was seen and treated by Dr. David F. Friedrick, who, on the occasion of the first visit, diagnosed her injury as an acute lumbosacral strain. By April 21, he noted that the back symptoms were gradually improving, but because the patient still had some residual low back pain he advised her "not to return to her job for at least two or more weeks or until the pain completely subsides." At a further consultation on May 5, claimant still complained of pain in the right low back, whereupon Dr. Friedrick instructed her to obtain a lumbosacral support, and she did so. On July 7, the doctor stated in a letter to claimant's attorney: "* * * I would say that normally Mrs. Walden should have been able to return to work on approximately May 22, 1961, following the fitting of the lumbosacral support. However, in the meantime, she has developed symptoms *which I feel are not referrable to the back* and because of this, she was referred to Dr. Richard Herndon here in Springfield for medical evaluation." (Emphasis ours.) Again, in a letter dated July 29, 1961, the doctor wrote: "* * * it was my feeling that her original injury is not related to her present complaints, which may be on a gastrointestinal or genitourinary basis. I would again say that her original injury was a lumbosacral strain and the complaints she has at this time have developed since that time and are not, in my opinion, related to her original injury."

Dr. Friedrick last saw claimant on November 4, 1961, at which time she still complained of pain from her back

radiating into the right leg, but stated that she felt much better while wearing her back support. His objective examination revealed no atrophy; the patient was able to stand on tiptoe and heels without difficulty; both legs could be fully extended in a sitting position, and straight leg raising was to ninety degrees bilaterally; but there was tenderness over the lumbar spine. The diagnosis remained a chronic lumbosacral strain with the possibility of an unrelated visceral disease which was being treated by Dr. Herndon. In a letter to claimant's attorney dated March 21, 1962, Dr. Friedrick said: "In my opinion, the * * * patient sustained a lumbosacral strain on approximately March 6, 1961. Ordinarily, this type of injury subsides within three to six weeks. In this case, Mrs. Walden's symptoms were still present on my last examination dated November 4, 1961. Even though she is still symptomatic, I do not feel that this injury can be classified as permanent, and I expect that the symptoms will eventually subside."

The remaining medical evidence consisted of the testimony of Dr. Harold Norris who saw claimant at his office on April 26, 1962. His only objective findings were some limitation of motion of the spine and some muscle spasm in the lower right lumbar muscles. While she gave him a history of pain, she was in no pain at the time of the examination and there was no spontaneous pain when the limited motion was observed. The doctor testified: "My impression at the time of my examination was that she had a chronic low back strain of the muscles and ligaments of the lower back." He expressed no opinion as to the ability of claimant to resume employment, or as to the permanency of the injury, but did state it would appear that she would have to wear the back support indefinitely.

When testifying before the arbitrator on October 17, 1962, claimant stated she had not worked since the injury because "I haven't felt like it." Describing her complaints, she testified that she got pains in her back while doing

housework, that she had no pain while sitting straight or standing still, but that if she would bend over for five or ten minutes at a time, the pain would radiate into her right leg. She admitted that, more than a year before her injury, she had been warned by her doctor not to do certain lifting because of her age and female ailments, and stated that her employer had been advised of such fact. Further, she stated that for at least a year prior to the hearing, she had taken no medication stronger than aspirin.

The claimant also testified before the Commission on September 11, 1963, and conceded she had not returned to work and stated that she had "never been told by a doctor that I was or was not able to return to work." She said she had not seen a doctor for six months and that she was able to do housework in her home, including scrubbing, cooking, washing dishes and cleaning, although her right leg bothered her occasionally. In addition, she testified: "If absolutely necessary I guess I could have gone back to work after November 4, 1961, but I do not know how long I could stand it. I did not go back to try."

To recover benefits under the Workmen's Compensation Act, a claimant has the burden of proving all elements of his case, including extent and permanency of injury, by a preponderance or greater weight of the evidence, and an award that is not supported by substantial evidence must be set aside. (*Canhan Sheet Metal Corp.* v. *Industrial Com.*, 31 Ill.2d 325; *American Brake Shoe Co.* v. *Industrial Com.* 20 Ill.2d 132.) It is well established that liability cannot rest upon imagination, speculation or conjecture, but must arise out of facts established by a preponderance of the evidence, (*Mirific Products Co.* v. *Industrial Com.* 356 Ill. 645,) and further, that although a claimant's testimony standing alone may be sufficient to allow an award, an award is not justified if all of the facts and circumstances in the record preponderate in favor of the opposite conclusion. (*Bernard* v. *Industrial Com.* 25 Ill.2d 254.) And while

it is primarily within the province of the Commission to determine questions of fact, such as those herein involved, (*Electro-Motive Division, General Motors Corp.* v. *Industrial Com.* 411 Ill. 224,) it is nevertheless the duty of a reviewing court to weigh the evidence, and if the Commission's decision is against the manifest weight of the evidence, it must be set aside. (*United States Steel Corp.* v. *Industrial Com.* 8 Ill.2d 407; *Corn Products Refining Co.* v. *Industrial Com.* 6 Ill.2d 439.) Applying these principles to the evidence in the record at hand, it is our opinion that the decision of the Commission was erroneous in this case.

Manifestly, the evidence is insufficient to sustain an award of temporary total disability for a period of 64 weeks. Within the meaning of the compensation act, temporary total disability exists from the time an injury incapacitates an employee for work until such time as he is as far recovered or restored as the character of the injury will permit. (*Shell Oil Co.* v. *Industrial Com.* 2 Ill.2d 590; *Consolidated Coal Co. of St. Louis* v. *Industrial Com.* 311 Ill. 61.) In proving such period of incapacity, it is not enough for the employee to show that he did not work—he must also show that he was unable to work. *Crerar Clinch Coal Co.* v. *Industrial Com.* 3 Ill.2d 88; *Lehigh Stone Co.* v. *Industrial Com.* 315 Ill. 431.

There is no dispute here that the period of temporary total disability lasted at least 11½ weeks, or from March 6, 1961, the date claimant stopped work because of her injury, to May 22, 1961, a date one week after she had obtained a lumbosacral support. Seizing upon Dr. Friedrick's observations that claimant "normally" should have been able to return to work on May 22 and his report that she had on such date developed other symptoms unrelated to her injury, the employer insists that May 22 marked the end of the period of temporary disability caused by the injury. However, while there was no specific medical testimony as to claimant's ability to resume normal employment,

we believe the Commission could with reason find that the period of disability extended to November 4, 1961, the date of Dr. Friedrick's last examination. Although the latter did indeed state that an injury of the type involved would normally subside within three to six weeks, he also said on May 21, 1961, that claimant had sustained an acute lumbosacral strain and that he anticipated "this will improve slowly over a period of time if she does not abuse her back and wears her support as directed." On November 4, 1961, 35 weeks after the injury, his examination revealed symptoms of a lumbosacral strain still present, but the claimant herself testified she "guessed" she could have gone to work after November 4, 1961.

The sole evidence relating to temporary total incapacity after November 4, 1961, is the claimant's testimony that she did not feel like working, and her statement that she did not know how long she would last if she tried to work. Such testimony, however, clearly falls within the realm of conjecture and speculation and cannot support an award. Particularly is this so since it appears that after November 4, 1961, claimant performed her normal household duties, which were not unlike the duties she would have performed at the nursing home, and since it appears that one of the conditions of her employment was that she would not be required to do heavy lifting. Under all of the circumstances, it cannot be said there is any substantial evidence of temporary total disability beyond November 4, 1961. We are not unmindful that claimant was examined by Dr. Norris in April, 1962; but nothing in his testimony or report permits an inference that she was in fact physically incapable of returning to work.

We are also of the opinion the claimant failed in her burden of proving permanent injury to her leg, and that the Commission's finding of a 50% complete and permanent loss is against the manifest weight of the evidence. Dr. Friedrick flatly expressed the opinion that claimant's injury

was not permanent and suggested that much of her difficulty emanated from the unrelated visceral disease for which she was being treated by Dr. Herndon. Coupled with this is the evidence that there is no limitation of motion or use of the leg, or atrophy of the muscles, and claimant's admission that she can perform usual household chores. Dr. Norris, while stating it was his impression claimant had a "chronic low back strain," expressed no opinion as to the permanency of the injury, nor as to the degree the leg would be completely disabled, if at all. The only other evidence in the record related to claimant's subjective complaints of pain. Under all of the circumstances, it is our opinion the finding of permanent and complete loss of use of the right leg rested on speculation and conjecture rather than substantial evidence. *Cf. Doody* v. *Industrial Com.* 28 Ill.2d 596.

Accordingly, and for the reasons stated, the judgment of the circuit court of Greene County is reversed and the cause is remanded thereto with directions to further remand the cause to the Commission for an award of temporary total disability in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*