MICHAEL PEMBLE, Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Schneider, Inc., Appellee and Cross-Appellant).

Third District (Industrial Commission Division)   No. 3—88—0241WC

Opinion filed April 5, 1989.

Julie L. Galassi, of Harvey & Stuckel, Chartered, of Peoria, for appellant.

John A. Maciorowski and Gregory G. Vacala, both of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant appeals a decision of the Industrial Commission (Commission) which denied him additional temporary total disability benefits and certain medical expenses and awarded only 40% permanent total disability to his right arm. Respondent cross-appeals, contending the circuit court was without subject matter jurisdiction to review the Commission award. We affirm.

Claimant, a steam fitter-welder, injured his right elbow in an industrial accident on January 20, 1982. Conservative treatments proved ineffective, and claimant underwent successive surgeries in 1982 and 1983 to release a tendon and nerve in his right arm. Pursuant to his petition under section 19(b—1) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b—1)), a hearing was conducted on September 10, 1984, after which the arbitrator awarded claimant 89⁶/₇ weeks of temporary total disability, medicals, and made a finding of 40% permanent and complete loss of use of the right arm. On review to the Industrial Commission, the Commission reduced temporary total disability to 87¹/₇ weeks and remanded for further hearing on permanency because the arbitrator erred in reaching this issue at the section 19(b—1) hearing. No further review was sought and respondent paid the award.

Thereafter, claimant filed a second petition alleging intermittent temporary disability from September 10, 1984, the date of the first arbitration hearing, through January 23, 1985, the date of the second arbitration hearing. At this second hearing, claimant testified he attempted to return to work at the Commonwealth Edison Byron Station in October 1984 as a welder. He remained on the job for three weeks, working only three days a week before he quit because of pain and swelling in his right arm and wrist. A treating physician, Dr. Hill, administered an injection for pain in October of 1984. Claimant subsequently attempted to secure a welding position at the Clinton Nuclear Power Plant but was unable to pass a three-day welding test. He was subsequently admitted to the hospital on December 10, 1984, and administered three ganglion blocks by Dr. Hill. Claimant testified he did not notice any improvement in his arm after these procedures. Claimant also submitted to a vocational rehabilitation evaluation in December 1984, although he denied taking this course of action at the direction of his attorney.

On cross-examination, claimant admitted that although he continued to try to find work as a welder, jobs in the construction area were scarce and many members of his local union were out of work.

The deposition of Dr. David Connor, an orthopedic surgeon, was

also admitted. Connor initially examined claimant, at respondent's behest, in June 1984. A second examination was requested by claimant's attorney and performed by a therapist working under the direction of Connor at his hand rehabilitation unit on September 19, 1984. Connor reviewed the therapist's notes for the purpose of the deposition.

Based on a comparison of the results of the two exams, Connor was of the opinion claimant had gained motion in several of his digits but the overall range of test scores had not fluctuated. Connor acknowledged pinch and grip strength tests revealed weakness in the right arm as compared to the left, as well as decreased strength in right shoulder flexion, and the lack of ability to fully straighten the right elbow. Based on these findings, Connor concluded it was most likely claimant "could not be doing a lot of heavy,. forceful, repetitive activities, and it would probably be somewhat dangerous if he would be climbing and had to rely on [his right] arm to stabilize himself in case he fell." Connor thought lifting 75 pounds very often would be a limiting factor in employment and working overhead with a decreased range of motion to the elbow would probably be difficult for claimant and would decrease the length of time he could work in that position. In Connor's opinion, these restrictions were most likely permanent, although they were the same restrictions Connor would have thought applicable to claimant after his first examination.

On further questioning about the test results, Connor noted claimant's inability to straighten his arm to the extent of 40 degrees in September was actually a 20-degree increase in range of motion from the June 1984 exam. As for the pinch and grip strength tests, Connor stated there was a two- to three-pound margin of error in the pinch test and a four- to five-pound margin of error in the grip test. He agreed if there was more than a four- to five-pound difference in the two tests on the unaffected member, he would suspect a lack of effort on the part of the patient in performing the test. Connor noted in June 1984, claimant had a 107-pound grip strength average in his left arm, while the September exam revealed only an 86-pound strength in the same arm. Connor stated this showed a lack of effort on claimant's part in performing the test.

Connor also found insignificant a lack of five degrees in flexion in the right arm during the September test as compared with full flexion of the arm in June because this small amount of difference did not interfere with the function of the arm. Connor also found no atrophy in the upper right extremity.

Connor disputed the diagnosis of reflex sympathetic dystrophy reached by Dr. Hill and stated his belief further medical treatment

would not be likely to provide any benefit to claimant. Connor also indicated it was possible claimant was malingering.

The arbitrator denied the claim for additional temporary total benefits and again set claimant's permanent total disability at 40% of the right arm. On review to the Commission, additional evidence was presented.

Claimant testified that after March 18, 1985, he sought employment at several welding supply dealers at the direction of the Department of Rehabilitation without success. He admitted no work was available at the time. He also admitted earning approximately $650 performing welding at home out of his garage. He stated, however, his arm continued to swell and he experienced pain from his elbow to his wrist. The swelling occurred when he pulled aggressively on tools or used the right arm for a long period of time.

Melvin Mikkelson, a rehabilitation counselor, saw claimant on referral by claimant's attorney. An evaluation for vocational testing was performed by a rehabilitation counselor evaluator. Based on the test results, the evaluator recommended claimant remain in the construction field as a welding supervisor. Mikkelson noted at that particular time it was difficult to find work in the construction field because jobs were scarce.

While Mikkelson was of the opinion claimant could not return to his job as a steam fitter because of physical limitations, he also suggested to claimant several other job opportunities, including construction supervision, middle management, owning a business, additional mechanical training, including computers, and sales. Mikkelson recommended claimant continue searching for work.

On cross-examination, Mikkelson stated claimant never applied for a job outside of the construction field prior to March 1985. Mikkelson acknowledged claimant was briefly employed at Xerox in August 1985 at $7 an hour, but quit the job after two days of work because others working for Xerox were being paid more than claimant. Based on claimant's aptitude, Mikkelson was of the impression claimant could have stayed with Xerox and eventually been promoted into a higher paying job.

James Raingains, a rehabilitation evaluator for the Institute of Physical Medicine and Rehabilitation, testified he recommended claimant receive vocational counseling to identify alternative jobs other than welding or steam fitting. In Raingains' opinion, claimant tested at the 12th-grade level and had prior experience as a supervisor in the steam fitter-welder profession. He recommended claimant receive family and financial counseling and job placement assistance.

The Commission affirmed the arbitrator's decision denying benefits for any additional temporary disability including medicals as well as the finding of 40% permanent total disability to claimant's right arm. On review to the circuit court, the order of the Commission was confirmed.

Claimant initially contends he is entitled to temporary disability because Dr. Hill, the treating physician, advised claimant on May 31, 1984, to seek rehabilitation because in Hill's opinion at that time, "it [was] doubtful [claimant would] be able to return to work as a steam fitter."

■ That evidence was considered by the arbitrator and Commission in the first proceeding when the Commission determined temporary disability ended as of June 8, 1984. Since claimant did not seek further review of the Commission's decision, the Commission finding on that point is *res judicata* and may not now be collaterally attacked. In any event, Hill's opinion prior to the first arbitration proceeding is not conclusive since there was also testimony presented by private investigators for respondent to the effect claimant was observed at the garage of his home, out of which he operated a welding business, performing heavy labor while using tools such as impact wrenches and a heavy sander without apparent difficulty to his right arm. The Commission was within its discretion in determining claimant could perform these tasks as of June 8, 1984, and discount Hill's opinion.

■ Claimant also points to Dr. Connor's deposition testimony to the effect he was concerned about petitioner continuing as a steam fitter or welder if he had to climb stairs, work over his head, or move heavy objects in excess of 75 pounds. At no time, however, did Connor absolutely rule out claimant's ability to return to that type of work and, in fact, claimant has continued to seek work in the construction field as a welder or steam fitter and continues to work out of his garage performing these tasks. Based on claimant's own testimony and that of the rehabilitation counselor, the Commission was well within its prerogative in determining claimant was unable to locate work because of employment conditions rather than physical limitations. Moreover, claimant was employed by Xerox repairing mechanical devices. He quit, not because of physical limitations, but because of a dispute over the salary he was receiving. The Commission found this to be evidence of employability and that decision is not against the manifest weight of the evidence.

■ Claimant also maintains because he has been accepted into the Department of Occupational and Rehabilitation Services program

he has demonstrated temporary disability. We disagree. The evidence is clear he is qualified for certain jobs but initially resisted seeking work outside the construction area during a time when such employment was unavailable. The difficulty in securing employment was economic, not physical.

■ Claimant also takes exception with the arbitrator's finding he was malingering. Dr. Connor stated in his deposition and in a report summarizing his June 1984 exam that claimant had heavy calluses on his hand which indicated to Connor he was performing some sort of vigorous work at a time when he claimed he was unable to work. Connor also pointed out significant discrepancies in the strength tests conducted during the two exams. For example, although there was only a four- to five-pound margin of error in the grip test, claimant demonstrated a 21-pound discrepancy between the June and September 1984 tests in the *left* arm, the uninjured member. Connor testified this indicated claimant was not putting forth his best effort in performing the test. Connor also noted no atrophy in the right extremity, which would have been expected, given a three-year disability to the arm. Finally, of the tests administered on claimant in September 1984, those which showed a decrease in function from the previous exam were subjective tests over which claimant had some control. Taken in conjunction, these various aspects of the evidence support a finding of malingering.

■■ Claimant would have the court adopt a rule that if a party can never return to the precise job task he performed prior to the accidental injury, he continues to be temporarily disabled. That is not the test, however. Temporary total disability is to be awarded for the period of time between the injury and the date the employee's condition has stabilized. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 35, 44, 454 N.E.2d 252, 257.) Temporary total disability exists from the time an injury incapacitates an employee for work until such time as he is as far restored as the permanent character of his injury will permit. (*Shell Oil Co. v. Industrial Comm'n* (1954), 2 Ill. 2d 590, 119 N.E.2d 224.) One is temporarily totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists. (*Zenith Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 278, 437 N.E.2d 628.) In proving such period of incapacity, it is not enough for the employee to show he did not work—he must also show that he was unable to work. *Arbuckle v. Industrial Comm'n* (1965), 32 Ill. 2d 581, 207 N.E.2d 456.

■ Here claimant clearly indicated he could work and sought work. At most, he could not work at precisely the same job tasks for

which he was employed prior to the injury. This is reflected by the permanent aspect of his disability. Since his condition has stabilized, the Commission determination claimant has not demonstrated continuing temporary disability is not against the manifest weight of the evidence.

Claimant next maintains it was error to deny medical expenses for treatment by Dr. Hill because Dr. Connor did not say surgical treatment would be of no benefit but only that such treatment was unlikely to be a benefit to claimant. Connor also testified, however, as of September 19, 1984, there was nothing further medically which would improve claimant's condition. This opinion predated the ganglion blocks performed on claimant in December 1984, which claimant testified provided no relief.

■ While it has been stated the Workers' Compensation Act provides no limitation on the duration of an employer's obligation to provide medical services required to relieve the effects of an injury (*Efengee Electrical Supply Co. v. Industrial Comm'n* (1967), 36 Ill. 2d 450, 223 N.E.2d 135), there is also usually no dispute about the claimant's need for continued medical care, its origin and the accident in question, and the reasonableness of the expenses. Here, the Commission could conclude from claimant's own testimony that the subsequent treatment by Dr. Hill which provided no benefit confirmed Dr. Connor's prior diagnosis further medical treatment would be ineffective.

■ ■ Respondent also complains the finding of 40% disability is against the manifest weight of the evidence. Claimant asks that a finding of 75% disability be made. The determination of permanent partial loss of use of a member is not capable of mathematically precise determination, and estimation of partial loss is peculiarly the function of the Industrial Commission. Because of the Commission's expertise in the area of workers' compensation, its finding on the question of disability should be given substantial deference. (*Board of Education v. Industrial Comm'n* (1983), 96 Ill. 2d 239, 449 N.E.2d 839.) It is for the Commission to resolve disputes in the evidence and to draw reasonable inferences and conclusions from the evidence, and the Commission's decision may not be set aside on review unless it is contrary to the manifest weight of the evidence. (*Glover v. Industrial Comm'n* (1985), 140 Ill. App. 3d 361, 485 N.E.2d 605.) Here there is evidence of nerve damage and limitation in range of movement. Yet, there is also significant evidence claimant has substantial use of the right hand and arm. There is also evidence claimant is employable in occupations working with his hands and arms, the only limitation being claimant may not be able to lift large weights or work over his

head for extended periods of time. The Commission's decision is not against the manifest weight of the evidence.

■■ Claimant's final contention that the Commission failed to award penalties is without merit. Since the Commission properly determined claimant was not entitled to additional benefits, it cannot be said the employer vexatiously delayed paying benefits to which claimant was not entitled.

■■ Turning to the cross-appeal, we conclude the trial court did not lack subject matter jurisdiction. In this case, the Commission issued its original decision on January 13, 1987. On January 27, 1987, claimant filed a written request for a summons, which was promptly issued by the circuit clerk. On January 28, 1987, respondent filed a motion to correct a clerical error in the Commission's decision concerning the amount of temporary disability previously awarded by the arbitrator at the first arbitration proceeding. A corrected decision was issued by the Commission on March 11, 1987, and claimant thereafter refiled a timely new written request for summons in the original circuit court proceeding. That request was amended to show the date of the corrected Commission decision, and dates for the return on summons were also appropriately changed. A second summons was then issued by the circuit clerk. We have examined the circumstances here and those revealed by the decision in *American Can Co. v. Industrial Comm'n* (1986), 149 Ill. App. 3d 83, 500 N.E.2d 544, and find them distinguishable. In *American Can*, it was the employer who was attempting to proceed in both the circuit court and before the Commission in an effort to both review and revise the Commission's original decision. Moreover, when the second request for summons was filed, respondent in *American Can* did not file a new bond and, thus, did not strictly comply with the terms of the Workers' Compensation Act.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BARRY, P.J., and McNAMARA, WOODWARD, and LEWIS, JJ., concur.