KATHLEEN GALLENTINE, Appellant, v. THE INDUSTRIAL COMMIS-SION *et al.* (K mart Corporation, Appellee).

Second District (Industrial Commission Division)   No. 2—89—1229WC

Opinion filed August 22, 1990.

Brian P. Reese, of Reese & Reese, of Rockford, for appellant.

Robert G. Shapin, of Ganan & Shapiro, P.C., of Chicago, for appellees.

JUSTICE LEWIS delivered the opinion of the court:

Claimant, Kathleen Gallentine, filed a petition for an emergency hearing pursuant to section 19(b—1) (Ill. Rev. Stat. 1987, ch. 48, par.

138.19(b—1)) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) against the respondent, K mart Corporation, following the respondent's discontinuance of her temporary total disability benefits (TTD) and her medical expenses. In addition, the claimant filed a petition for penalties under sections 19(k) and 19(*l*) (Ill. Rev. Stat. 1987, ch. 48, pars. 138.19(k), 138.19(*l*)) and for attorney fees under section 16 (Ill. Rev. Stat. 1987, ch. 48, par. 138.16) of the Act. Following a hearing on these petitions, the arbitrator found that the claimant continued to be temporarily totally disabled and awarded her 155⁶/₇ weeks of TTD; that the claimant was entitled to medical expenses totalling $2,644.07; and that she was entitled to penalties under section 19(*l*) in the amount of $2,380 and to attorney fees under section 16 in the amount of $1,500. On review, the Industrial Commission (Commission) modified the arbitrator's decision and reduced her TTD to 134 weeks; disallowed the $1,500 awarded by the arbitrator for the chiropractor's bill as an unreasonable and unnecessary medical expense; and disallowed the arbitrator's award of penalties and attorney fees. Additionally, the Commission held that the arbitrator erroneously admitted a report of Dr. R.L. Anderson over the respondent's objection, and the Commission refused to consider that evidence in its decision. The Commission's decision was subsequently confirmed by the circuit court, and the claimant appeals.

On appeal, the claimant raises the following issues: (1) whether the Commission erroneously denied the admittance of Dr. R.L. Anderson's report; and (2) whether the Commission's decision was against the manifest weight of the evidence with regard to (a) the reduction of the claimant's TTD, (b) the Commission's finding that the chiropractor's bill was unreasonable and unnecessary and the denial of the payment of the bill, and (c) the reversal of the arbitrator's award of penalties and of attorney fees. To consider these issues, a statement of the facts is necessary.

At the hearing before the arbitrator, the claimant testified that she was employed by the respondent in January 1985 and that her duties included taking freight from upstairs, hanging up merchandise, and doing displays of merchandise in the lingerie department. Her work shift was from 8 a.m. or 8:30 a.m. until noon, although she sometimes worked past this time if another employee was unable to work. On January 23, 1985, the claimant lifted a clothes rack to place it on a caster, and when she did so, she felt something "pop" in her back. The claimant reported her injury to the floor supervisor and continued to work until the end of her shift. At the time of the acci-

dent, the claimant had immediate pain in her back, and as the morning progressed, she developed pain down her hips and both of her legs. By the end of her shift, the claimant was in considerable pain.

At the end of her work day, the claimant went home. Shortly thereafter, she went to the emergency room of the hospital, where she was examined, given pain medication and told to see her personal physician. The claimant called her doctor, Dr. Neiweem, immediately, but she was unable to obtain an appointment until a week later. When the claimant saw Dr. Neiweem, he examined her, prescribed physical therapy for her, and told the claimant not to return to work. Dr. Neiweem admitted the claimant to the hospital in March 1985 for a myelogram and a CAT scan.

Also in March 1985, while the claimant was still receiving physical therapy, the claimant started chiropractic treatments with Dr. Meyers. The claimant stated that Dr. Meyers' treatments did not help her condition; however, the chiropractic treatments temporarily relieved her pain for approximately two hours after the treatment. The claimant saw Dr. Meyers on a regular basis until April 1987, and she still occasionally went to him for treatment. It was Dr. Meyers who referred her to Dr. R.L. Anderson. On cross-examination, the claimant admitted that Dr. Neiweem did not refer her to Dr. Meyers, and that it was Dr. Neiweem's opinion that chiropractic treatment would not help her condition.

The claimant first saw Dr. Anderson in May 1985. At that time, Dr. Anderson examined her, prescribed more physical therapy, told her to walk and advised the claimant not to return to work. Dr. Anderson also had electrodiagnostic tests, an epidural block, and a CAT scan performed on the claimant. Dr. Anderson told the claimant that she had a herniated disc at L5-S1 and that she had two disc protrusions. Dr. Anderson had scheduled the claimant for surgery in October 1986, but because of the claimant's other physical problems at that time, the surgery was not performed, and the surgery had never been rescheduled. Dr. Anderson had referred her to "back school" in March 1987 and to Mayo Clinic in April 1987.

The claimant testified that she was still under Dr. Anderson's care and that her last appointment with Dr. Anderson was on January 15, 1988. Before returning to work in August 1987, Dr. Anderson had placed work restrictions on her. Dr. Anderson had advised her not to do any strenuous or heavy lifting or to stay in one position, i.e., either bending, sitting, or standing, for long periods of time. According to the claimant, she has never been released for full-duty work.

The claimant attempted to return to work on August 24, 1987,

and upon her return to work, the claimant was assigned to run a cash register. To run the cash register, the claimant had to operate the cash register, pull merchandise through, and package the merchandise for the customer. The merchandise involved could weigh up to 20 pounds.

On her first day back to work, the claimant was scheduled to work for three hours. The claimant did not operate the cash register that day, but she observed another employee. After standing and watching the other employee for about an hour and a half, the claimant began to have excruciating pain in her left leg. The respondent had provided the claimant with a stool so that she could sit down when necessary; however, this did not help her as the claimant could only alleviate her pain by walking around or by lying down and propping up her leg. The claimant told the floor supervisor that she was in pain, and the claimant was sent home. The following day, the claimant continued to have pain, so she called the respondent and said that she was not coming in to work that day. After calling the respondent, the claimant called Dr. Anderson, and he told her not to go into work. The claimant had not returned to work since that time, although the claimant stated she had sought other work within her restrictions. It was the claimant's testimony that the respondent had not offered her a position within her work restrictions.

The claimant testified that she was not currently receiving TTD payments because the respondent had discontinued her TTD as of May 1987. The claimant stated that she cannot lift heavy items and that, while she can twist and turn, she cannot do these activities for any extended period of time. The claimant further stated that she always has pain in her left leg, as well as tingling and numbness in three of her toes.

In addition to the claimant's testimony, numerous medical records and reports were admitted into evidence by both the claimant and the respondent. Because of the nature of the claimant's issues, the evidence presented in these records will be discussed under the consideration of the issues.

The first issue raised by the claimant is that the Commission erroneously excluded Dr. Anderson's letter report of January 18, 1988, from the evidence and from the Commission's consideration. The claimant contends that the Commission's ruling on the admissibility of this evidence is erroneous for two reasons: first, that the parties had stipulated that the medical evidence in this case could be presented by way of reports and records and that the Commission's ruling violated the stipulation; and second, that the Commission's exclusion of the

doctor's report as hearsay was erroneous, since the hearsay rule is not absolute when there is evidence of a document's trustworthiness and where, as here, such evidence of the report's trustworthiness was present.

■■ Initially, we consider the claimant's contention that the Commission's ruling violated the parties' stipulation. At the beginning of the arbitration hearing, the arbitrator stated that the parties had entered into a written stipulation, which was identified as the parties' request for hearing and which was admitted as arbitrator's exhibit No. 1. It is the language contained within the request for hearing form upon which the claimant supports her argument. The pertinent language upon which the claimant relies is as follows:

"Petitioner and Respondent are prepared to try this 19(b)—1) Petition to completion on 1/19/88 except for (a) medical evidence which both parties agree may be submitted by reports or deposition ***."

The claimant interprets this language to mean that the parties stipulated that all of the medical evidence could be presented by reports alone and that this evidence would not be challenged by either party. In this interpretation, the claimant is mistaken.

The primary purpose of a request for hearing form is to delineate and to limit the issues which are in dispute, and it was for this purpose that this form was considered a stipulation of the parties by the arbitrator. Here, the respondent disputed whether the claimant remained temporarily disabled, and it was to this issue that the doctor's report in question pertained. The standard language of the request for hearing form simply permitted medical evidence to be admitted through reports or depositions, *if both parties agreed that it may*. In the absence of an agreement between the parties to admit the records, as was the case here, that party was not foreclosed from objecting to the evidence. Therefore, the Commission did not violate the parties' stipulation when it excluded the doctor's report on the basis of the respondent's hearsay objection.

■■ ■ Next, we consider whether the Commission properly held that the doctor's report was not admissible as it was hearsay evidence. It has been held that "the rule against the admission of hearsay evidence is not absolute and that, under certain circumstances, the probability of the evidence's accuracy and trustworthiness may act as a substitute for cross-examination under oath." (*Fencl-Tufo Chevrolet, Inc. v. Industrial Comm'n* (1988), 169 Ill. App. 3d 510, 514, 523 N.E.2d 926, 929; *United Electric Coal Co. v. Industrial Comm'n* (1982), 93 Ill. 2d 415, 444 N.E.2d 115.) Here, the report of

Dr. Anderson of January 18, 1988, was one of many reports of the doctor which were presented by both the claimant and by the respondent. The respondent did not object to the admission of the claimant's treating doctor's other reports. Additionally, the respondent did not challenge the authenticity of the doctor's report of January 18, 1988. Because of these factors, the report was trustworthy and was admissible even though it was hearsay. Therefore, the Commission should have admitted Dr. Anderson's letter report of January 18, 1988; however, under the circumstances presented here, the Commission's ruling was harmless error. Having reviewed the content of Dr. Anderson's letter report, it is clear that the doctor's report simply stated the claimant's current physical status, but nothing in the report supported the claimant's position that the doctor had not released her for work. Thus, although the report was admissible, the error does not require reversal, where, as here, there has been no prejudice to the claimant, and the failure to admit the doctor's report did not materially affect the outcome of this case. *Illinois Piping Co. v. Industrial Comm'n* (1987), 156 Ill. App. 3d 955, 509 N.E.2d 1107.

The claimant's second issue, consisting of three subissues, concerns whether the Commission's decision was against the manifest weight of the evidence. The general principles regarding the manifest weight of the evidence questions are that it is the claimant who bears the burden of proving her claim by a preponderance of the evidence; that it is the Commission whose function it is to determine the credibility of the witnesses and to resolve conflicts in the evidence; that the Commission is not bound by the arbitrator's findings; and that the Commission's findings and decision will not be overturned upon review unless its determination is against the manifest weight of the evidence. (*Rambert v. Industrial Comm'n* (1985), 133 Ill. App. 3d 895, 477 N.E.2d 1364.) Bearing these principles in mind, we consider the claimant's separate subissues.

The claimant's first subissue is that the Commission's reduction of her TTD benefits was against the manifest weight of the evidence. It is well established that the determination of the time for which a claimant is temporarily totally disabled is a question of fact for the Commission to decide, and, unless that decision is against the manifest weight of the evidence, it will not be disturbed on review. (*Lusietto v. Industrial Comm'n* (1988), 174 Ill. App. 3d 121, 528 N.E.2d 18.) The period of temporary total disability encompasses the time from which the injury incapacitates the claimant until such time as the claimant has recovered as much as the character of the injury will permit, *i.e.*, until the condition has stabilized. (*Rambert*, 133 Ill.

App. 3d 895, 477 N.E.2d 1364.) To show temporary total disability, the claimant must show not only that she did not work, but that she was also unable to work. *Rambert*, 133 Ill. App. 3d 895, 477 N.E.2d 1364.

■ In the instant case, Dr. Sherman, a physician seen by the claimant at the respondent's request, sent a letter to the respondent dated August 4, 1987. Dr. Sherman had seen the claimant on July 30, 1987, and, on the basis of his examination, it was his opinion that the claimant could return to light duty, that is, work which did not require repetitive bending and stooping or which did not require the claimant to lift more than 15 to 20 pounds. Another letter report dated May 29, 1987, from Dr. Fealey, a doctor seen by the claimant at Mayo Clinic at her treating physician's request, stated that the claimant could return to light duty work, just as Dr. Sherman had. The work restrictions imposed upon the claimant by Dr. Fealey were that she should not lift more than 30 pounds, and that she should not put undue stress on her lower back by standing eight hours a day or by performing jobs which required vigorous bending, twisting, or jarring to her spine. Lastly, Dr. Anderson, the claimant's treating physician, stated in a letter report of August 26, 1987, that he had examined the claimant on August 20, 1987, and that if the claimant returned to work, she should avoid heavy lifting, repetitive twisting and bending, and standing for long periods of time.

Following the receipt of the above letter reports, the respondent attempted to provide the claimant with the job of cashier, which position appeared to be within her work restrictions. By the claimant's own testimony, the respondent provided her with a stool so that she did not have to sit or stand for long periods of time, and the job required her to lift up to 20 pounds, an amount within her weight lifting restrictions. The only evidence offered by the claimant that she could not work after August 24, 1987, when she worked for 1½ hours, was her uncorroborated testimony that Dr. Anderson told her to not work on August 25, 1987. However, the claimant did not see Dr. Anderson after August 24, 1987, until January 15, 1988, and, as we noted previously, following the doctor's examination in January 1988, the doctor's report gave an update of the claimant's physical condition, and nothing in his letter indicated that he had altered his previous position that the claimant could return to light duty work. Therefore, there was sufficient evidence to support the Commission's determination that the claimant was able to return to work as of August 21, 1987, and that the claimant was not entitled to TTD after this date.

■ The claimant argues that her uncorroborated testimony that

she was told by Dr. Anderson that she was unable to return to work was sufficient to support a finding that she was entitled to continuing TTD. In this assertion the claimant is partially correct. However, uncorroborated testimony will support an award for benefits only if a consideration of all the facts and circumstances supports that decision. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1980), 83 Ill. 2d 213, 414 N.E.2d 740.) Here, the facts and circumstances conflicted with the claimant's testimony and did not support an award for TTD benefits.

■■■ The claimant's next subissue is that the Commission's disallowance of Dr. Meyers', the chiropractor's, bill as an unnecessary and unreasonable medical expense was against the manifest weight of the evidence. The claimant's argument of this issue is twofold: (1) that the Commission erroneously placed the burden of proving the reasonableness and necessity of Dr. Meyers' treatment upon her; and (2) that the Commission's denial of Dr. Meyers' bill was also erroneous in that the Commission based its decision upon the fact that Dr. Meyers was a chiropractor and that Dr. Meyers' treatment of the claimant was not beneficial.

With regard to the claimant's first argument, that the Commission erroneously imposed the burden of proving the reasonableness upon her, we find that the Commission was correct in this regard, for it is the claimant who bears the burden of proving her reasonable medical expenses by a preponderance of the evidence. *Gray Hill, Inc. v. Industrial Comm'n* (1986), 145 Ill. App. 3d 371, 495 N.E.2d 1030.

The claimant also contends that the Commission denied Dr. Meyers' bill because Dr. Meyers was a chiropractor and because his treatment of her was not beneficial. In the Commission's decision, the denial of Dr. Meyers' bill was given as follows:

"The Commission concludes that Petitioner failed to prove that these charges [Dr. Meyers' expenses] were either reasonable or necessary, based on the evidence that Petitioner was simultaneously receiving physical therapy at Community General Hospital while seeing Dr. Meyers, and on the opinions of Drs. Neiweem and Sherman, who both felt that chiropractic treatment was unbeneficial and unwarranted in the case."

From this statement by the Commission, it is clear that the denial of Dr. Meyers' expenses was not on the basis that he was a chiropractor, and the claimant's argument in this regard is without merit.

Likewise, the Commission did not deny Dr. Meyers' expenses because his treatment of the claimant was unsuccessful in curing her condition. What is apparent is that the Commission found that Dr.

Meyers' treatment of the claimant was unnecessary and thus, unreasonable, and the record supports the Commission's decision. In Dr. Neiweem's records of March 22, 1985, the doctor indicated that the claimant discussed with him the benefits of receiving chiropractic treatment. The doctor stated in his notes that "I have explained [to] her that I have no objections to her trying chiropractic treatment, [sic] however, I do not feel that these will significantly improve her back." Similarly, in a letter report dated May 9, 1985, from Dr. Sherman, Dr. Sherman indicated that he had examined the claimant on May 7, 1985. In his letter report, Dr. Sherman stated as follows: "Chiropractic treatment may be keeping her busy, however, I doubt that it would be helping to any great degree." In addition to the two doctor's reports, the claimant herself testified that the chiropractic treatments gave her temporary relief from pain for a short time after a treatment, but that the treatments had not helped her overall condition. From this evidence, the Commission could have concluded that the chiropractic treatments received by the claimant were unnecessary, and the Commission's denial of Dr. Meyers' expenses was not erroneous. See *Pemble v. Industrial Comm'n* (1989), 181 Ill. App. 3d 409, 536 N.E.2d 1349.

The last subissue raised by the claimant is that the Commission's reversal of the arbitrator's award of penalties and of attorney fees was erroneous as it was against the manifest weight of the evidence. In this case, the arbitrator originally awarded penalties under section 19(*l*) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(*l*)), in the amount of $10 per day for 238 days for a total of $2,380. The arbitrator also awarded the claimant attorney fees under section 16 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.16) in the amount of $1,500. On review, the Commission determined that there was a genuine dispute as to whether the claimant remained temporarily totally disabled and reversed the arbitrator's award for sanctions. The Commission found that the respondent discontinued paying the claimant TTD in June 1987, following the May 1987 reports from Mayo Clinic and Dr. Sherman's report of July 23, 1986, in which it was stated that the claimant could return to work with restrictions.

It is the respondent who bears the burden of proving that a failure to pay TTD is reasonable. (*Waldschmidt v. Industrial Comm'n* (1989), 186 Ill. App. 3d 477, 542 N.E.2d 726.) Whether the employer's conduct was unreasonable, thereby justifying the imposition of penalties, is a question of fact for the Commission. (*Waldschmidt*, 186 Ill. App. 3d 477, 542 N.E.2d 726.) Here, the evidence

supported the Commission's finding that there was a genuine dispute regarding the claimant's continuing eligibility for TTD, for Dr. Fealey stated in his report of May 29, 1987, that the claimant could return to work with restrictions. Dr. Fealey's report, combined with Dr. Sherman's prior report of July 23, 1986, in which Dr. Sherman stated the claimant could probably return to work with a 15-pound lifting restriction, was sufficient evidence to support the Commission's determination that there was a reasonable question as to whether the respondent remained obligated to pay the claimant TTD.

Further, the Commission found that the claimant was no longer entitled to TTD as of August 21, 1987, the day following Dr. Anderson's examination of the claimant, as Dr. Anderson had found the claimant able to return to light duty work. Since the Commission had correctly found that the claimant was not entitled to additional benefits, it cannot be said that the respondent's discontinuance was unreasonable. Therefore, the Commission properly reversed the arbitrator's award for penalties under section 19(*l*).

Additionally, the Commission was also correct in reversing the arbitrator's award for attorney fees under section 16, as attorney fees are not recoverable in the absence of section 19(k) penalties. (*Waldschmidt*, 186 Ill. App. 3d 477, 542 N.E.2d 726; *Boker v. Industrial Comm'n* (1986), 141 Ill. App. 3d 51, 489 N.E.2d 913.) Here, the arbitrator only awarded penalties under section 19(*l*), so the award of attorney fees by the arbitrator was inappropriate.

For the foregoing reasons, the judgment of the circuit court of Winnebago County, confirming the Industrial Commission's decision, is affirmed.

Affirmed.

BARRY, P.J., and McNAMARA, WOODWARD, and McCULLOUGH, JJ., concur.