THE CITY OF GRANITE CITY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (James Reader, Appellee).

Fifth District (Industrial Commission Division)    No. 5—94—0867WC

Opinion filed June 6, 1996.

RARICK, J., dissenting.

Matthew W. Kelly, of Coppinger, Carter, Schrempf & Blaine, Ltd., of Alton, for appellant.

Shon A. Park, of Becker & Associates, P.C., of Granite City, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent employer City of Granite City, Illinois, appeals from

an order of the circuit court of Madison County finding the decision of the Illinois Industrial Commission (Commission) to be against the manifest weight of the evidence and finding that claimant James Reader was entitled to temporary total disability (TTD) benefits for the additional period of September 11, 1991, through February 11, 1992, the date of the arbitration hearing. The arbitrator awarded claimant TTD benefits for the period February 13, 1991, through April 17, 1991, and August 28, 1991, through September 8, 1991, a total of $10^4/_7$ weeks, at a rate of $410.10 per week (820 ILCS 305/8(b) (West 1992)) and awarded $19,233.27 for reasonable and necessary medical expenses (820 ILCS 305/8(a) (West 1992)). The Commission, with one commissioner dissenting, affirmed the award.

The issue is whether the decision of the Commission awarding TTD to September 8, 1991, was against the manifest weight of the evidence. Claimant argues that the Commission should have extended the period of TTD to February 11, 1992. We reverse the circuit court and affirm the Commission.

Claimant's application for adjustment of claim alleged a right knee injury on February 3, 1991. Claimant testified that on February 3, 1991, he was a sergeant for the respondent's police department. His knee was twisted while on duty during an attempt to subdue a suspect. Previously, he had no right knee injury. This appeal presents no question concerning the nature of claimant's injury or whether his condition had stabilized prior to September 8, 1991.

It is not disputed that claimant had two surgeries for his work injury. On February 13, 1991, arthroscopic surgery was performed. Dr. Joseph Whalen performed a lateral meniscectomy of the right knee. Then on March 6, 1991, Dr. Whalen performed a total lateral meniscectomy.

The first day claimant took off of full-duty work was on February 13, 1991, for his first operation. After both surgeries, he returned to light-duty work on April 17, 1991. He was given temporary light duty with the detectives. He went back off work again on August 28, 1991, returning temporarily on September 8, 1991. He went off work September 9, 1991, and did not return to work. Claimant informed the department by letter of his intention to take disability retirement. The letter indicated his last day of work with the department was September 10, 1991, and his first day of retirement was September 11, 1991.

Prior to taking disability retirement, claimant had been offered temporary light-duty work. No one told him when the temporary light duty would end. There was no indication that the department was getting ready to terminate his employment. At the time of his

retirement, he was working at a desk in uniform on deceptive practices cases. He was getting full benefits as a police officer and was working 40 hours per week.

It was claimant's understanding that disabled officers could not remain under the pension system, and if the pension board would not let them stay, they could not be police officers. Claimant admitted that he applied for disability, and that no one in the department ever told him there was no light-duty work available for him and he was aware an Officer Polivick was kept on light duty for a year, receiving full pay and benefits as a police officer.

■ The time during which a worker is temporarily totally disabled is a question of fact. The Commission's decision will not be disturbed unless it is against the manifest weight of the evidence. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118-19, 561 N.E.2d 623, 627-28 (1990). In this case, the Commission adopted the arbitrator's finding that claimant voluntarily left his light-duty job and removed himself from the work force in order to collect a pension and, as a result, was not entitled to additional TTD.

■ The duration of TTD is controlled by the claimant's ability to work and his continuation in the healing process. To show entitlement to TTD benefits, claimant must prove not only that he did not work, but that he was unable to work. *Gallentine v. Industrial Comm'n*, 201 Ill. App. 3d 880, 887, 559 N.E.2d 526, 531 (1990). In *Presson v. Industrial Comm'n*, 200 Ill. App. 3d 876, 880-81, 558 N.E.2d 127, 131 (1990), the Commission's finding that the period of TTD ended when claimant was offered a light-duty job within his restrictions was upheld. The claimant refused to even attempt to do the job. Similarly, in *Gallentine*, three doctors cleared the claimant to return to light-duty work, and the employer attempted to provide a job within the restrictions. There was no medical testimony corroborating claimant's testimony that she could not work at the light-duty job. The denial of TTD after the claimant refused to continue working the light-duty job was upheld. *Gallentine*, 201 Ill. App. 3d at 887-88, 559 N.E.2d at 531-32.

■ In this case there is no medical evidence that claimant could not return to light-duty work. The Commission did not decide that, as a matter of policy, a person is not simultaneously entitled to workers' compensation benefits and disability pension benefits under a statutorily created pension fund. The claimant did not present any evidence to show that his injury was not stabilized or that he could not perform light-duty work. The parties, the arbitrator, and the Commission became consumed with claimant's application for a disability pension, his eligibility to stay in the pension system if he was

disabled and on light duty, and his retirement. These may be proper considerations in a permanent disability setting. However, there is a distinction between when an officer is entitled to a pension and whether the officer is entitled to TTD. The claimant was given light duty. He does not argue that his injury was not stabilized, that he was not released for light duty, or that he could not physically perform the light-duty assignment. Although the pension board may have eventually sought claimant's termination as a police officer, claimant was not entitled to anticipate that action by the board, terminate his employment when light-duty work was available to him, and still collect TTD benefits. The Commission's decision was not against the manifest weight of the evidence.

The judgment of the circuit court of Madison County is reversed, and the Commission's decision is reinstated. The cause is remanded to the Commission pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

Circuit court reversed; Commission decision reinstated.

RAKOWSKI, COLWELL, and HOLDRIDGE, JJ., concur.

JUSTICE RARICK, dissenting:

I respectfully dissent. The majority concludes that the Commission could reasonably infer that the city provided Reader with a light-duty job within his restrictions and that Reader chose instead to voluntarily leave his employment and take a disability pension. Reviewing the record, and Reader's testimony in particular, I do not believe this inference to be reasonable. In a very detailed and thorough dissent, Commissioner Jones notes that the uncontroverted evidence demonstrates that once it became clear that Reader was permanently disabled from performing his regular duties as a police officer he was instructed by his superiors to seek a disability pension. The city maintains that Reader's own testimony demonstrates that he was never instructed to seek a disability pension. Reader testified that he told Captain Pomeroy that he had never been in this position, referring to his being disabled, and asked Pomeroy what to do. He was told how to go about obtaining a disability pension. While Pomeroy may not have specifically ordered Reader to seek a disability pension, the implication of Pomeroy's response was clear. Reader was aware that it was standard policy for a police officer who was permanently disabled from performing his regular duties to be placed on a disability pension. The only reasonable interpretation of Pomeroy's response, from Reader's perspective, was that he was be-

ing instructed to seek a disability pension. Further, Reader testified that upon completing the necessary paperwork, Pomeroy said: "Well, you go home. You can't be a police officer with the city ***."

When Reader was informed that his TTD benefits were being discontinued, he sent a letter, dated October 23, 1991, addressed to the city attorney, the chief of police, and the compensation advisor, requesting work within his restrictions or that his TTD benefits be reinstated. Reader received no response to this letter until February 3, 1992, only days before this cause was set for pretrial proceedings. Only then was Reader offered light-duty work, and no details were provided and in fact had not been provided as of the date of the arbitration hearing. Further, the record demonstrates that Reader made numerous unsuccessful attempts to find other employment within his restrictions. These facts belie the inference that Reader voluntarily ceased work in order to collect a disability pension and support the inference that he was instructed to take a disability pension. Given Reader's unrebutted testimony, the only reasonable inference was that Reader was ordered to take a disability pension.

For these reasons, I dissent.