VERNON ANDERSON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (East St. Louis Police Department, Appellee).

Fifth District (Industrial Commission Division)   No. 5—00—0465WC

Opinion filed April 30, 2001.

464

Patricia A. Zimmer, of George Ripplinger & Associates, of Belleville, for appellant.

William P. Hardy and Dennis J. Graber, both of Hinshaw & Culbertson, of Springfield, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The claimant, Vernon Anderson, filed an application for adjustment of claim under the Workers' Occupational Diseases Act (Act) (820 ILCS 310/1 *et seq.* (West 1992)), seeking benefits for a depressive disorder which he alleged arose out of and in the course of his employment with the East St. Louis police department (the Department). Following a hearing, an arbitrator awarded the claimant temporary total disability (TTD) benefits for 79 weeks and ordered the Department to pay $2,170 in medical expenses incurred by the claimant. The Industrial Commission (Commission) reversed the arbitrator's deci-

sion and denied the claimant benefits under the Act. The claimant sought judicial review of the Commission's decision in the circuit court of St. Clair County, which confirmed the Commission's decision. The claimant then filed this timely appeal. For the reasons that follow, we affirm.

The following factual recitation is taken from the evidence presented at the arbitration hearing. The claimant joined the Department in 1977, advanced through the ranks, and was appointed an inspector in 1988. During this period of time, Alonzo Perron was one of the claimant's supervisors. In 1980, Perron was appointed assistant chief of the Department, and in May of 1991, he was appointed chief of police. According to the claimant's testimony, he had a number of "run-ins" with Perron, beginning as early as 1980. The claimant testified, though, that the incidents prior to 1989 "never amounted to anything."

On June 5, 1991, Perron issued an order reassigning the claimant from his position as an inspector to the position of sergeant in the Department's patrol division, a move that resulted in a $600 reduction in the claimant's annual salary. The claimant testified that Perron informed him of the reassignment during a closed-door meeting on June 9, 1991. According to the claimant, after Perron informed him that he and his fellow inspectors would be reassigned to patrol duties, Perron then stated that he was going to "destroy" the claimant and told the claimant that he "better take out some more insurance." The claimant stated that he interpreted Perron's statements to be a threat on his life.

The claimant testified that he went home after his conversation with Perron but that, later that evening, he drove to Perron's home. According to the claimant, he "sat in [his] car for a while with a weapon." After a period of time, the claimant left and went to a vacant house, where he sat until his father and brother found him approximately four hours later.

On the following day, the claimant saw his personal physician, Dr. William Juergens. In his note of that visit, Dr. Juergens indicated that the claimant suffered from "job stress" and was to remain off work until he could be seen by Dr. Robert Hicks.

Dr. Hicks, a psychiatrist, evaluated the claimant on June 11, 1991. According to Dr. Hicks' record of that evaluation, the claimant reported that he had recently been demoted to the rank of sergeant by the chief of police. The claimant reported a rivalry between himself and the chief and stated his belief that the chief's actions toward him were a political reprisal designed to harass him into quitting the police force. In his record, Dr. Hicks went on to state that the claimant "has

recently been obsessed by the idea of shooting the police chief, though he thinks this would be an irrational move and would result in his death or incarceration." As a result of that evaluation, Dr. Hicks was of the impression that the claimant suffered from "probable major depression with secondary obsessional thinking." On that same day, Dr. Hicks signed a note stating that the claimant was medically unable to work.

The claimant continued to treat with Dr. Hicks after his initial evaluation. His treatment consisted of anti-obsessional and anti-depressant drugs and psychotherapy. Dr. Hicks did not authorize the claimant to return to work until December 15, 1992. In a letter dated September 11, 1998, and addressed to the claimant's attorney, Dr. Hicks opined that, although the claimant's work environment was not totally responsible for his condition, it was a "major factor in the intensity, severity, and duration of his illness."

Perron testified that one of his job duties was to discipline members of the Department, including the claimant, and that there was nothing unique about his relationship with the claimant. Perron denied ever having harassed the claimant and specifically denied threatening the claimant or telling the claimant that he needed to obtain insurance.

The medical records of Drs. Juergens and Hicks were received into evidence. These records contain absolutely no reference to any confrontation between the claimant and Perron on June 9, 1991, nor do they reflect that the claimant told either physician that Perron had threatened him. Additionally, Dr. Juergens' medical records indicate that he had been periodically prescribing Valium for the claimant's "anxiety" since 1976.

After the hearing, the arbitrator issued a written decision finding that the claimant established that he sustained an occupational disease arising out of and in the course of his employment with the Department and that his condition was causally related to that occupational disease. The arbitrator found the claimant to be credible and held that Perron's threat to the claimant's well-being was "beyond the common and necessary stresses of employment." The arbitrator relied on Dr. Hicks' letter in support of her finding that a causal relationship existed between the depression from which the claimant suffered and his employment. Based upon those findings, the arbitrator awarded the claimant 79 weeks of TTD benefits for the period from June 11, 1991, through December 15, 1992, and ordered the Department to pay $2,170 in medical expenses incurred by the claimant.

The Department sought a review of the arbitrator's decision. The

Commission issued a decision in which it reversed the arbitrator's decision and denied the claimant benefits under the Act. The Commission determined that the claimant failed to prove that he sustained an occupational disease arising out of and in the course of his employment. Unlike the arbitrator, the Commission found that the claimant's testimony that he had been threatened by Perron was not credible. It noted that the claimant's version of the events of June 9, 1991, is wholly uncorroborated and finds no support in the records of his treating physicians. Additionally, the Commission found that the conditions under which the claimant worked were "not so outside the norm in terms of everyday employment stresses occasioned by employees in general so as to warrant compensability." On review, the circuit court of St. Clair County confirmed the Commission's decision.

On appeal, the claimant attacks the Commission's finding that he did not prove that he sustained an occupational disease arising out of and in the course of his employment. He first contends that the Commission erroneously based this finding on the fact that his testimony regarding Perron's alleged threat was uncorroborated. He further argues that the Commission's decision is against the manifest weight of the evidence. We disagree on both counts.

■ The claimant in an occupational disease case has the burden of proving both that he suffers from an occupational disease and that a causal connection exists between the disease and his employment. The question of whether such a causal relationship exists is one of fact for the Commission to decide. *Payne v. Industrial Comm'n*, 61 Ill. 2d 66, 69, 329 N.E.2d 206 (1975).

■ In deciding questions of fact, it is the function of the Commission to judge the credibility of witnesses, resolve conflicting evidence, and draw whatever reasonable conclusions and inferences might be warranted by the evidence. *General Steel Industries v. Industrial Comm'n*, 49 Ill. 2d 552, 555, 276 N.E.2d 290 (1971). We will not substitute our judgment for that of the Commission on a factual issue unless the Commission's finding is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987).

■ The Commission exercises original, rather than appellate, jurisdiction and is in no way bound by the arbitrator's findings. *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 483, 548 N.E.2d 1033 (1989). We reject, as we have in the past, the argument that an extra degree of scrutiny must be applied to a decision of the Commission which reverses the decision of an arbitrator. *Wagner Castings Co. v. Industrial Comm'n*, 241 Ill. App. 3d 584, 594, 609 N.E.2d 397 (1993).

In this case, the claimant testified that Perron threatened him on

June 9, 1991. The arbitrator found the claimant to be credible and held that the incident was "beyond the common and necessary stresses of employment." The arbitrator also found that the "[t]emporal relationship" between the confrontation which the claimant claimed had occurred and the diagnosis of major depressive disorder was a "substantial factor" in her decision. In contrast, the Commission did not find the claimant to be credible and, instead, believed Perron's testimony denying that he ever threatened the claimant. The Commission also noted that none of the claimant's medical records make reference to Perron's alleged threats on June 9, 1991.

■ At the outset, we reject the claimant's argument that the Commission erred as a matter of law by basing its determination that he did not sustain a compensable injury on the fact that his testimony was uncorroborated. It is true, as the claimant asserts, that a recovery under the Act can be based upon an injured employee's uncorroborated testimony. *Old Ben Coal Co. v. Industrial Comm'n*, 198 Ill. App. 3d 485, 492, 555 N.E.2d 1201 (1990). That does not, however, mean that uncorroborated testimony will always support a benefit award. Rather, the Commission and reviewing courts can, and frequently do, take into consideration the fact that a claimant's testimony is uncorroborated in resolving issues of fact and making credibility determinations. See *Caterpillar Tractor Co. v. Industrial Comm'n*, 83 Ill. 2d 213, 414 N.E.2d 740 (1980); *Walden v. Industrial Comm'n*, 76 Ill. 2d 193, 390 N.E.2d 911 (1979); *Gallentine v. Industrial Comm'n*, 201 Ill. App. 3d 880, 559 N.E.2d 526 (1990).

■ The Commission based its determination that Perron did not threaten the claimant on June 9, 1991, in part, on the fact that the claimant's testimony of those events was uncorroborated. The Commission also relied on the contrary testimony of Perron and on the fact that the records of the claimant's treating physicians contain no reference to the alleged threats (see *Jensen v. Elgin, Joliet & Eastern Ry. Co.*, 24 Ill. 2d 383, 388, 182 N.E.2d 211 (1962) (statements as to cause of injury or condition made by patient to physician from whom he seeks treatment fall within guarantee of truthfulness)). Additionally, as the Commission noted, the claimant's original application for adjustment of claim alleged a date of accident "approximately on and after October 1989." It was not until the arbitration hearing in September 1998 that the claimant amended the date of accident to June 9, 1991, the date of Perron's alleged threats. Based upon the record before us, we are unable to find that the Commission's determination that the claimant's testimony regarding a threat by Perron was not credible is against the manifest weight of the evidence.

■ The Commission also found that the claimant "offered no evi-

dence of any unique aspect of his employment that one could reasonably and objectively describe as anything people in the general workforce are not commonly exposed to." As this court stated in *Runion v. Industrial Comm'n*, 245 Ill. App. 3d 470, 473, 615 N.E.2d 8 (1993):

> "Recovery for nontraumatically induced mental disease is limited to those who can establish that: (1) the mental disorder arose in a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience; (2) the conditions exist in reality, from an objective standpoint; and (3) the employment conditions, when compared with the nonemployment conditions, were the 'major contributory cause' of the mental disorder."

■ Accepting, as we must, the Commission's determination that Perron did not threaten the claimant, there is nothing in the record before us to support the proposition that the claimant's employment exposed him to any greater stress or tension than one could reasonably and objectively expect to encounter as a member of the general workforce. The claimant himself stated that, other than the alleged incident of June 9, 1991, the "run-ins" he claimed to have had with Perron "never amounted to anything."

For these reasons, we hold that the Commission's finding that the claimant failed to prove that he sustained an occupational disease arising out of and in the course of his employment with the Department and its denial of his claim for benefits under the Act are not against the manifest weight of the evidence. Consequently, we affirm the decision of the circuit court of St. Clair County confirming the Commission's decision in this matter.

Affirmed.

McCULLOUGH, P.J., and O'MALLEY, HOLDRIDGE, and RARICK, JJ., concur.