PEABODY COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Ned Wright, Appellee).

Fifth District (Industrial Commission Division)   No. 5—90—0294WC

Opinion filed May 14, 1991.

Kevin M. Hazlett, of Keefe & DePauli, P.C., of Fairview Heights, for appellant.

Robert C. Nelson, of Nelson, Bement, Stubblefield & Rich, of Belleville, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Ned Wright, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*). The arbitrator awarded claimant temporary total benefits. The Industrial Commission (Commission) adopted the arbitrator's decision. The Commission's decision was confirmed by the circuit court. The respondent, Peabody Coal Company, appeals.

 Respondent raises one issue on appeal, namely, the Commission's decision that claimant's condition of ill being was causally related to the accidental injuries he sustained on November 4, 1987, was against the manifest weight of the evidence. For an injury to arise out of one's employment, the injury must have an origin in some risk connected with or incidental to the employment so that the employment and injury are causally connected. (*Palmer House v. Industrial Comm'n* (1990), 200 Ill. App. 3d 558.) It is the Commission's function to resolve disputed questions of fact, including those of causal connection, to draw permissible inferences and to decide which of the conflicting medical views is to be accepted. (*Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382.) Further, a causal connection between work duties and a condition of ill being may be established by a chain of events including claimant's ability to perform job duties before the date of accident and inability to perform the same duties following that date. *Darling v. Industrial Comm'n* (1988), 176 Ill. App. 3d 186, 193.

At the arbitration hearing, claimant testified as follows. He had worked for respondent as a coal miner since 1975. In 1983, he received a chymopapain injection following a work-related back injury. Claimant was compensated by the employer for said injury. In 1986, claimant injured his back again while in respondent's employ and underwent a laminectomy. Again, his worker's compensation claim was settled. In January 1987, he returned to work for respondent as a coal miner. He lost no time at work due to back complications prior to the instant injury.

On November 4, 1987, claimant was operating a machine called a scoop, which is built low to the ground and is difficult to enter. The scoop was bottomed in mud and, thus, lower than usual. Because the scoop was parked near the side of a tunnel, claimant had difficulty in entering the machine which, unlike others, did not have hand grips to simplify entry into the scoop. As claimant twisted to get into the scoop's seat, he experienced a sharp, sudden pain in his back and

right leg. Claimant was unable to enter the scoop and was thereupon taken to a hospital emergency room, where he was examined by Dr. Pflasterer, claimant's treating physician. Dr. Pflasterer released him to return to work on November 11, 1987. Claimant attempted to continue working but experienced difficulty in moving and lifting heavy objects. Prior to the injury, he had loaded heavy roof blocks and roof bolts onto the scoop without difficulty. Following the injury, he did not operate the scoop nor did he perform heavy lifting tasks, leaving those to his co-workers. Claimant had trouble standing or sitting all day and would often lie down on a makeshift cot during his lunch hour.

Claimant, who had taken no pain medication prior to the subject injury, took same continuously afterwards. He experienced an aggravation of his discomfort once while carrying a 12-pack of soda and another time reaching for his truck's dipstick. He continually suffered muscle spasms in his lower back following the incident until the time of his spinal fusion operation in November 1988. Claimant last worked on April 22, 1988, on which date he was shoveling coal for approximately 30 minutes when the resulting back pain caused him to stop shoveling. He finished the shift and did not return to work.

Dr. Pflasterer, claimant's treating physician, testified via an evidence deposition. He had seen claimant in the capacity of family physician since 1984. He had treated claimant a number of times between claimant's return to work in January 1987 and the instant injury. On November 4, 1987, he examined claimant at the Sparta Hospital emergency room for the subject injury. Dr. Pflasterer, who was familiar with a scoop, took a history of claimant's injury while working with said machine. He found bilateral muscle spasms in claimant's lower back, and he determined these findings to be objective. Diagnosing an acute lumbar strain, Dr. Pflasterer prescribed medication. Though claimant experienced soreness and stiffness, Dr. Pflasterer released claimant to return to work on November 11, 1987. He prescribed no restrictions on claimant's work duties because "there is no way you can put any restrictions on them if they are going to work at the coal mine."

Dr. Pflasterer saw claimant numerous times after the subject injury. On March 4, 1988, he found that claimant "had a two plus spasm in the left lumbar area, locked [sic] with a list [sic] when he came in, and he was not able to work." Claimant was released to return to work on March 21, 1988. He saw claimant on April 22, 1988, at which time claimant was unable to work.

As to the issue of causal connection, Dr. Pflasterer opined that the acute strain claimant suffered while entering the scoop was the cause of the back problems he had experienced since November 4, 1987. The subsequent incidents in which claimant hurt his lower back by lifting grocery bags or reaching for a dipstick merely exacerbated his symptoms. Dr. Pflasterer based his opinion on the degree of claimant's pain following the injury, his physical examinations of claimant and the history given by claimant.

At the request of respondent's insurer, claimant was examined by Dr. Michael Ralph, a board-certified orthopedic surgeon, who testified by means of an evidence deposition. Dr. Ralph did not see claimant prior to the November 4, 1987, accident. He examined claimant on March 15, 1988, and May 20, 1988. On the first examination, Dr. Ralph found that claimant was not in acute distress. Claimant was able to walk on his toes and heels. He had negative straight-leg-raising in both sitting and lying positions. Dr. Ralph observed no muscle atrophy; claimant's patellar and achilles reflexes were normal. Dr. Ralph found no involuntary muscle spasm. X rays indicated minimal post-operative changes. His examination of claimant on May 20, 1988, revealed similar findings.

Dr. Ralph opined that the abnormalities seen in an MRI scan of claimant's lower back were from the previous surgeries. He found no causal connection between the subject injury and claimant's subsequent complaints.

On cross-examination, Dr. Ralph conceded that he had not performed any back surgery since his medical residency. Further, he admitted that Dr. Murphy, who performed a spinal fusion on claimant in November 1988, had a different interpretation of the MRI scan performed on claimant. Where Dr. Ralph found minimal abnormalities, Dr. Murphy determined the following: a frank herniation at L5—S1, posterior bulging at L3—4 and a herniated disc present at L3—4 on the right side. Dr. Ralph did not offer an opinion as to whether claimant's lifting of grocery bags in December 1987 or his reaching for a dipstick in February 1988 was causally related to claimant's complaints.

Also entered into evidence were records from St. Elizabeth's Hospital regarding claimant's admission on November 8, 1988, for a spinal fusion procedure at L5—S1. The fact sheet recites claimant's accident entering the scoop on November 4, 1987. Physical examination notes indicate restrictions in forward and backward bending. Bilateral paraspinal muscle spasms resulting in scoliosis directed to the left were noted. Claimant walked with a limp. Straight-leg-raising

was positive on the right at 75 degrees and negative to the left. There was diminished pinprick sensation of the dorsum of the right foot. Further, the operative report dated November 9, 1988, refers to an underlying nerve root noted to be attenuated over a frankly herniated disc fragment with attendant calcification. Presurgical X rays taken on November 8, 1988, show a narrowing of the L5—S1 interspace with post-laminectomy changes at L5—S1 which had occurred since the discectomy was performed in August 1986.

The arbitrator's finding of a causal connection was based primarily on Dr. Pflasterer's testimony, which unequivocally asserted a causal connection between the November 4, 1988, accident and claimant's subsequent lower back problems. As stated above, the Commission adopted this finding in its decision.

■ Under these circumstances, we find that the Commission's decision is not against the manifest weight of the evidence. It is evident that claimant experienced no substantial back pain prior to the November 4, 1987, accident and, following same, suffered significant back pain. Dr. Pflasterer, who saw claimant regularly before and after the subject injury, testified that claimant's condition of ill being was causally related to the subject injury. His opinion is buttressed by the objective finding of muscle spasms in claimant's lower back immediately following the accident at issue. Dr. Pflasterer's testimony serves to balance that of Dr. Ralph, who saw claimant on only two occasions, both of which followed the subject injury. Moreover, Dr. Ralph's testimony is undercut by Dr. Murphy's analysis of the MRI scan and the objective findings contained in the St. Elizabeth Hospital records.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

McCULLOUGH, P.J., and McNAMARA, LEWIS, and STOUDER, JJ., concur.