INGALLS MEMORIAL HOSPITAL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Joseph Napoletano, Appellee).

First District (Industrial Commission Division)   No. 1—92—1239WC

Opinion filed January 8, 1993.

Roddy, Power, Leahy, Guill, Zima & Gifford, Ltd., of Chicago (Alan D. Kalinoski, of counsel), for appellant.

Gaines & Gaines, of Chicago (Lewis P. Gaines, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Joseph A. Napoletano filed two applications for adjustment of claims for injuries occurring on February 3, 1984, and August 3, 1985, while employed by Ingalls Memorial Hospital. These two claims were consolidated and the arbitrator awarded claimant temporary total disability (TTD) benefits, medical expenses, and permanent partial disability (PPD) benefits to the extent of 22.5% of the man as a whole. The Industrial Commission (Commission) modified the arbitrator's award by reducing the amount of the medical expenses

awarded, finding that some of those expenses were attributable to an intervening automobile accident claimant had on April 27, 1989. The Commission also reduced the PPD benefits to 15% loss of use of the man as a whole. The circuit court confirmed the Commission's decision and Ingalls now appeals. We affirm in part and reverse in part.

At the time of the hearing, claimant was single and 32 years of age and had been hired by Ingalls in March 1981 as a physical therapist assistant. Claimant has an associate's degree in physical therapy and he assisted physical therapists by following the treatment plans they had prescribed for the various patients.

In 1970, claimant suffered a fracture to his right hip as a result of a unicameral bone cyst which deteriorated the hip bone. Claimant underwent surgery in 1971 on his left knee to correct the discrepancy in leg length as the result of the fracture to the hip in 1970.

The first injury occurred on Friday, February 3, 1984. Claimant was instructing a patient on weight training and had just finished 30 repetitions of arm curls with 75 pounds of weight. He was about to place the weights back onto the rack and he turned and extended his left arm. As he did this, claimant experienced pain in his left lower back. He testified it felt like the left side of his spine was "all pulled together" and he felt a strain up and down the left side of his spine.

Claimant immediately reported the incident to his supervisor, Laura Ruffner, who filled out an accident report. Claimant took Motrin for the pain but did not see a doctor. He worked the rest of the day and then returned to work on Monday, February 6. Claimant left work early that day because he was not feeling well and he did not return to work until February 20. Claimant received his regular salary during the time he was off. When he returned to work, claimant performed the same duties as prior to the injury but avoided any lifting. He never received treatment from a doctor for this injury but only took Motrin and attempted to treat himself.

The second injury occurred on August 3, 1985, while claimant was performing the same duties for Ingalls. On that date, claimant, along with three other people, was transferring a very large patient (300 pounds) from a tilt table to a cart. After the patient was on the cart, two of the transporters left. Claimant tried to put the side rail of the cart up, but was unable to do so because the patient was not far enough over on the cart. Claimant knelt upon the top of the cart and attempted, with the help of the other remaining transporter, to move the patient over by pulling on the draw sheet. Claimant felt a real sharp pain across the middle of his shoulder blades and neck.

Claimant reported the injury to the physical therapist on duty that day, Marsha Lilly, and an incident report was immediately filled out. Claimant experienced pain in his back for the rest of the day. Claimant returned to work following the weekend and reported the incident to his supervisor, Ruffner. She sent him to the employee health center where, one week later, he saw Dr. Hannig. Dr. Hannig prescribed Motrin, physical therapy and light-duty work.

Claimant began receiving physical therapy during working hours at Ingalls. Those treatments included hot packs, scapular mobilization, soft-tissue mobilization and vertebral mobilization, and lasted between 30 and 45 minutes per treatment. Claimant was treated six times before Ruffner told him he could no longer receive treatment during working hours. Claimant later testified he received 17 treatments during working hours. On November 24, 1985, claimant was fired by Ingalls for poor work performance and for making a mistake with a patient that could have presented a hospital liability.

Two weeks prior to his being fired, claimant began physical therapy at Suburban Medical Center which lasted until January 1986. Claimant received similar treatment at Suburban as he had at Ingalls, but characterized it as "not as effective" because the physical therapist assistant who treated him did not know how to do soft tissue mobilization or vertebral mobilization. Claimant estimated he received over 20 treatments at Suburban.

Next, claimant had physical therapy at Chicagoland Orthopedic Rehabilitation Services in Palos Heights, Illinois. This was treatment similar to that which he received at Ingalls, which lasted approximately six months. Claimant estimated he received over 60 treatments from this facility.

After a four-month period of no physical therapy, claimant began seeing a free-lance physical therapist, Helen Owens-Burkhart. Claimant had treatment with her until October 1989.

Since October 1989, claimant had not seen a physical therapist for treatment but rather had attempted to treat himself. Claimant purchased a TENS unit, prescribed by Dr. Charles M. Slack, to help control the pain in his back. Claimant testified he takes two or three 600-milligram tablets of Motrin and four or six 500-milligram tablets of Tylenol per day to control his pain and still experiences pain in his shoulder blades and lower back.

After his termination at Ingalls, claimant worked at Michael Reese Hospital from January 1986 through August 1986. Claimant next worked at LaGrange Hospital from September 1986 until February 1988. After that, he went to work at an out-patient clinic in Mel-

rose Park. He left there in May 1988 and went to work for West Town Visiting Nurses Association. He was employed there, part-time, for three months. He also worked part-time at RNC Rehabilitation Medicine clinics in July 1988. While working part-time at RNC, claimant also worked at Evergreen Physical Therapy. Upon leaving these two positions, claimant worked for a private contractor and at the time of the hearing, was employed by St. Joseph Hospital in Chicago. Claimant was employed as a physical therapy assistant at all of these places. His salary, since leaving Ingalls, was "within a couple of dollars" of what he earned at Ingalls.

On April 27, 1989, claimant was involved in an automobile accident in which his car was rear-ended while in motion. He was not hospitalized but missed one month of work. On November 25, 1986, claimant was examined by Dr. Dushyant Patel. This examination revealed an asymmetrical disc protrusion at L-5, S-1 on the left.

Various medical bills were admitted into evidence. Counsel for Ingalls stated he was not disputing the existence of these bills, but only Ingalls' liability for them. The bills admitted into evidence include: (1) various prescriptions to different pharmacies, amount unknown; (2) Helen Owens-Burkhart, $4,960; (3) Worker Rehabilitation Service, $650; (4) Dr. Dennis Levinson, $145; (5) Chicagoland Orthopedic Rehabilitation Services, $628; (6) Dr. Henry Acuna, $135; (7) Michael Reese Hospital, $1,300; (8) Michael Reese Hospital, $350; (9) Advanced Medical Imaging Center (radiologist), $421; (10) Dr. Charles Slack, $65; (11) Rush Presbyterian Hospital, $627; and (12) TENS unit, $665. Also admitted into evidence were the various reports and records of claimant's employment at Ingalls as well as the reports of the various physicians and physical therapists who have treated claimant.

On cross-examination, claimant denied he made up this claim because he was fired by Ingalls. He explained that, although he was a physical therapist assistant, he could not treat himself. Claimant was actively involved in weight-lifting between the ages of 17 and 23. In 1977, he strained his back but Ingalls was aware of this injury prior to its hiring him and this injury only bothered claimant for a few weeks. Claimant indicated that following his car accident in April 1989, he received treatment from Helen Owens-Burkhart for his injury from the car accident as well as the work-related injury. He admitted that he did not mention that he had been hurt while working at Ingalls on his application for employment at Michael Reese Hospital; however, he explained he falsified this information on the application because he needed to get the job. Claimant indicated that he re-

ceived a discount on the treatments administered at places in which he worked.

On May 30, 1990, the arbitrator issued his memorandum of decision. As to the February 3, 1984, injury, claimant was awarded the sum of $219.57 per week for a period of 1⁶/₇ weeks, that being the period of temporary total incapacity. As to the August 3, 1985, injury, claimant was awarded $266 per week for a period of eight weeks, that being the period of temporary total incapacity. Claimant was further ordered to receive the sum of $239.28 per week for a period of 112.50 weeks because the injuries sustained caused 22.5% disability of the man as a whole. Finally, claimant was awarded $8,175.39 in medical expenses.

On June 18, 1991, the Commission affirmed the decision of the arbitrator but modified it in part. The Commission found that claimant was temporarily totally disabled for a period of eight weeks which period commenced from the date petitioner was terminated, November 24, 1985, through January 19, 1986, when he returned to other employment. The Commission applied the case of *Ford Motor Co. v. Industrial Comm'n* (1984), 126 Ill. App. 3d 739, 467 N.E.2d 1018, which found that neither the ability to do light work nor the nonreceipt of medical treatment precluded a finding of TTD during the layoff. Thus, the court affirmed the arbitrator's award of TTD during the period of petitioner's termination until he received new employment.

The Commission modified the arbitrator's medical award finding that claimant was entitled to $6,755.52 for reasonable and necessary medical expenses. The Commission found the remaining medical expenses were attributable to the intervening automobile accident of April 27, 1989. In addition, the Commission found that some of the prescription bills were related to bills of claimant's mother, and Ingalls was not responsible for payment of those amounts.

Finally, the Commission noted a letter from Helen Owens-Burkhart to Dr. Charles Slack, which indicated that prior to the automobile accident of April 27, 1989, claimant had reached a point where he continued to have mild thoracic stiffness as well as intermittent complaints of low cervical, mid-thoracic and lumbar sacral stiffness. Claimant was able to maintain himself pretty well with the regular self-mobilization instruction program. The Commission noted that claimant had not undergone any surgery for his accidental injuries nor did the medical evidence show that surgery was recommended. Based on that, as well as its own expertise, the Commission concluded it viewed claimant's PPD differently than the arbitrator and thus

modified the arbitrator's award to reflect that claimant was entitled to PPD to the extent of 15% of man of the whole under section 8(d)(2) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(2)). On March 10, 1992, the circuit court of Cook County confirmed the Commission's decision. Ingalls timely filed its notice of appeal.

Ingalls first contends the Commission erred in awarding claimant TTD benefits for a period of eight weeks, that time being the period between claimant's termination from Ingalls on November 24, 1985, and January 19, 1986, when claimant obtained employment with Michael Reese Hospital. Ingalls states there is no evidence to show claimant was unable to perform his regular employment nor was he given any limitation concerning his ability to work.

■■ ■ Whether a claimant is entitled to compensation for TTD generally is a question of fact, and the reviewing court will only disturb the findings of the Commission if contrary to the manifest weight of the evidence. (*Hayden v. Industrial Comm'n* (1991), 214 Ill. App. 3d 749, 754, 574 N.E.2d 99, 102.) A claimant has the burden of proving all the elements of his case, including the extent and permanency of the injury, in order to recover benefits under the Act. (*Yellow Freight System, Inc. v. Industrial Comm'n* (1984), 124 Ill. App. 3d 730, 733, 464 N.E.2d 890, 892.) An employee is temporarily totally incapacitated from the time an injury incapacitates him for work until such time as he is as far recovered or restored as the permanent character of injury will permit. (*Archer Daniels Midland Co. v. Industrial Comm'n* (1990), 138 Ill. 2d 107, 118, 561 N.E.2d 623, 627.) In order to show TTD, claimant must show not only that he did not work but that he was unable to work. *Gallentine v. Industrial Comm'n* (1990), 201 Ill. App. 3d 880, 887, 559 N.E.2d 526, 531.

A TTD award is proper when he cannot perform any services except those for which no reasonably stable labor market exists. *Zenith Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 278, 287.

Here, claimant failed to prove he was entitled to TTD benefits for the eight-week period between when he was fired by Ingalls and hired by Michael Reese. Claimant testified Dr. Hannig put him on light-duty work. However, Dr. Hannig's records were not admitted into evidence. The record does show at claimant's request he was discharged by Dr. Hannig. Claimant did not present any evidence to show that he was unable to work during this period.

In his application for work at Michael Reese Hospital, claimant answered no to the question on whether he had any physical condition or disability which would affect his ability to perform the job, and fur-

ther stated he was still employed by respondent. Further, claimant did not want to immediately start work at Michael Reese because at the same time, he was looking for a better job.

■ The termination of TTD does not affect claimant's right to recover for permanency. The TTD termination date is merely the indicator that the injury has stabilized, the permanent character of the injury can be determined, and claimant's award for permanency, if any, should be determined.

■ It is noted there was no award of TTD from August 3, 1985, the date of the second injury, to November 24, 1985, the date claimant was terminated from employment. Only after he was terminated was he awarded TTD. Nothing in the record indicates claimant's health status changed November 24, 1985, when he was terminated. The record also does not show both that he was unable to work and did not work because of his August 3, 1985, injury. *Gallentine*, 201 Ill. App. 3d at 887, 559 N.E.2d at 531.

The evidence was insufficient to show that claimant was temporarily totally disabled during the time between his termination at Ingalls and his employment by Michael Reese Hospital. The Commission's decision granting claimant TTD benefits for that eight-week period was against the manifest weight of the evidence.

Next, Ingalls contends the claimant's award of $6,755.52 for medical expenses was against the manifest weight of the evidence. Ingalls suggests the treatments following those given at Suburban Medical Center were not reasonable or necessary. Finally, Ingalls asserts the failure to itemize in the record the bills of the various providers establishes that the Commission's finding is against the manifest weight of the evidence.

■ Under the Act, a respondent may only be ordered to pay for the treatment which was reasonably required to cure or relieve the petitioner of the effects of his injury. (*Quality Wood Products Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 417, 423, 454 N.E.2d 668, 671.) The standard of reasonableness is that which is usual and customary for similar services in the community where the services were rendered. (*General Tire & Rubber Co. v. Industrial Comm'n* (1991), 221 Ill. App. 3d 641, 650, 582 N.E.2d 744, 750.) The Commission's findings regarding the reasonableness of medical treatments will not be disturbed on review unless against the manifest weight of the evidence. *United States Steel Corp. v. Industrial Comm'n* (1985), 133 Ill. App. 3d 811, 818, 478 N.E.2d 1108, 1114.

■ Ingalls specifically challenges the $4,960 bill to Helen Owens-Burkhart. It contends her bill is significantly less than that amount.

However, at the hearing, Ingalls' attorney stated he was not disputing the existence of these bills but only the extent of Ingalls' liability for them. Thus, Ingalls has waived any argument regarding the amount of these medical bills. These bills were itemized in the record and we will accept the Commission's finding as to the total amount of those bills.

As to the reasonableness of the bills, Ingalls failed to present any evidence to show these bills were not reasonable with respect to what other physical therapists charge in the Chicago area. (See *General Tire*, 221 Ill. App. 3d at 650-51, 582 N.E.2d at 750.) Moreover, Ingalls presented no evidence to show that these treatments were not necessary to cure or relieve the effects of claimant's injury. Accordingly, the Commission's finding that these medical expenses were reasonable and necessary was not against the manifest weight of the evidence.

Finally, Ingalls contends the Commission's permanency award of 15% of the man as a whole pursuant to section 8(d)(2) of the Act is against the manifest weight of the evidence. Ingalls contends claimant failed to prove that his condition of ill-being, subsequent to the April 1989 automobile accident, was attributable to the August 3, 1985, work-related accident. Ingalls relies on the report of Dr. Elizabeth Kessler, who found no objective evidence to support a significant neurological injury prior to the automobile accident. Last, Ingalls suggests the Commission mistakenly referred to Helen Owens-Burkhart as "Dr. Burkhart" when discussing and relying upon a letter she wrote to Dr. Slack regarding claimant's condition.

■ The determination of the extent or permanency of an employee's disability is a question of fact for the Commission, and its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence. (*Amoco Oil Co. v. Industrial Comm'n* (1991), 218 Ill. App. 3d 737, 748, 578 N.E.2d 1043, 1051.) A causal connection between work duties and a condition of ill-being may be established by a chain of events including claimant's ability to perform job duties before the date of the accident and inability to perform the same duties following that date. (*Peabody Coal Co. v. Industrial Comm'n* (1991), 213 Ill. App. 3d 64, 65, 571 N.E.2d 1182, 1183.) It is the function of the Commission to resolve disputed questions of fact, including those of causal connection, to draw permissible inferences and to decide which of conflicting medical views is to be accepted. *Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382, 387, 454 N.E.2d 655, 657.

Dr. Elizabeth Kessler examined claimant on June 12, 1986. She found no neurological contraindications to his continuing with his usual activities, including full employment. She believed his pain might be improved by a consultation and subsequent physical therapy with a physiatrist.

On the other hand, Helen Owens-Burkhart's letter of September 5, 1989, to Dr. Charles Slack indicated that she found that, prior to the automobile accident, claimant had reached a point where he continued to have mid-thoracic stiffness as well as intermittent complaints of low cervical, mid-thoracic and lumbar sacral stiffness. She noted the automobile accident had aggravated his symptoms but that claimant was back to where he was prior to the accident. She believed he would probably always be bothered by this type of pain and would need to keep himself on a self-mobilizing instruction program.

■ Thus, there are two conflicting views as to the extent of claimant's condition of ill-being. This was for the Commission to decide. The fact that the Commission mistakenly referred to Helen Owens-Burkhart as a doctor does not affect the reasoning and findings in her letter as to the extent of claimant's injury. The evidence established that the August 3 injury caused claimant's condition of ill-being at least prior to the April 27, 1989, automobile accident. Prior to that accident, claimant was on prescription medication, still in pain, and receiving physical therapy treatments. He was still under the care of various doctors. The Commission discounted some medical expenses attributable to the automobile accident. A reasonable inference, in light of the fact that the Commission reduced the percentage of loss of man as a whole, is that it also reduced by an equal amount the causal connection of the injury due to the intervening automobile accident and claimant's current condition of ill-being. Thus, the Commission's decision that claimant was permanently partially disabled to an extent of 15% loss of the man as a whole was not against the manifest weight of the evidence.

For the foregoing reasons, the circuit court's order confirming the Commission's decision is affirmed as to the PPD award and reversed as to the award of TTD benefits.

Affirmed in part; reversed in part.

RAKOWSKI, STOUDER, WOODWARD, and RARICK, JJ., concur.