MAX SHEPARD, INC., d/b/a Mel Park Village Mart, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Sam Creinin, Appellee).

First District (Industrial Commission Division)   No. 1—03—0797WC

Opinion filed April 28, 2004.

Kane, Doy & Harrington, Ltd., of Chicago (Michael J. Brennan, of counsel), for appellant.

Gaines & Gaines, of Chicago (George L. Gaines and Lewis P. Gaines, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Max Shepard, Inc. (Shepard), appeals from an order of the circuit court confirming a decision of the Industrial Commission (Commission), awarding the claimant, Sam Creinin, benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)). For the reasons that follow, we affirm as hereinafter modified.

The claimant filed an application for adjustment of claim, seeking benefits under the Act for injuries he allegedly received out of and in the course of his employment on October 2, 1999. In that application, the claimant listed his employers as: Jerome S. Alport and Myra K. Alport, individually and doing business as Max Shepard, Inc.; Mel-Park Village Mart; Mel-Park Drugs; Mel-Park Deli and Liquor; and Village Currency Exchange. The following facts were established by the testimony and exhibits presented at the arbitration hearings.

On October 2, 1999, the 83-year-old claimant was employed by Shepard as a delicatessen manager. His duties included preparing trays of food, slicing meat, and overall running the delicatessen. On the morning of October 2, 1999, the claimant arrived at work and deactivated the security alarm at 6:13 a.m., as evidenced by the records of Certified Security, Shepard's alarm company. According to the claimant, after he spoke to a representative of Certified Security at 6:14 a.m., he brought newspapers and several food items into the store from a shed in the alley and began filling boxes which he obtained from a cooler with food. The claimant testified that, as he was filling the last box, he tripped on a box and fell against an ice cream cooler. Unable to walk and in pain, the claimant crawled to the phone located in the front of the store and called Jerome Alport, Shepard's president, and told him that he had broken his leg. When Alport arrived about 15 minutes later, the claimant was sitting on a chair in the store. Because the claimant could not stand and put weight on his left foot, Alport called "911."

Paramedics arrived at the scene and transported the claimant to Gottlieb Hospital, where Dr. Prinz, a board-certified orthopedic surgeon, diagnosed the claimant as suffering from a comminuted

fracture of the left tibia and fibula. Dr. Prinz applied an external fixator to the claimant's left tibial shaft fracture and performed an open reduction and internal fixation of the left distal fibular fracture.

The witnesses testified to conflicting accounts as to how the claimant came to be injured. As indicated earlier, the claimant testified that he tripped over a box while working and fell against an ice cream cooler. Alport testified that, when he arrived at the delicatessen, the claimant told him that he had fallen outside of the store. Alport also stated that he heard the claimant tell the paramedics that he had fallen outside of the store while getting out of his car.

A report dictated by Dr. Prinz on October 3, 1999, states, under the heading of "HISTORY OF PRESENT ILLNESS," that the claimant "sustained an injury on his way to work." However, in a progress note dated March 7, 2000, Dr. Prinz wrote that, although his records suggest that the claimant sustained an injury on his way to work, the claimant subsequently told him that he was actually injured at work when he fell over a box as he was filling orders.

Diego Palacios, one of the Melrose Park paramedics who transported the claimant to Gottlieb Hospital, testified that he and his partner picked up the claimant on October 2, 1999, at 7:57 a.m. According to Palacios, when he arrived, the claimant was lying on the floor, just inside of the door. Palacios acknowledged that he wrote a report of the incident which indicates that the claimant stated that he tripped on the sidewalk. However, Palacios testified that he did not know whether it was the claimant or some other individual at the scene who gave him that information. His testimony in this regard is consistent with a letter that he wrote on March 31, 2000, at the request of the claimant. The claimant denied telling Palacios that he tripped on the sidewalk, and Alport denied ever telling either the paramedics or the personnel at Gottlieb Hospital that the claimant had fallen in the parking lot.

Alport testified that he visited the claimant four or five times while he was hospitalized. According to Alport, the claimant told him that he had tripped over a box as he was getting out of his car and fell in the parking lot.

Anthony Aiadro, one of the claimant's friends, testified that, when he arrived at the delicatessen on October 2, 1999, Alport told him that the claimant fell on some boxes, broke his leg, and was taken to the hospital.

Paul Nicoski, Shepard's delicatessen manager until May 1999, testified that he visited the claimant in the hospital on October 4, 1999. According to Nicoski, the claimant told him that he tripped over a box as he was preparing lunches.

Subsequent to his admission to Gottlieb Hospital, the claimant continued under the care of Dr. Prinz. On January 5, 2000, Dr. Prinz operated to remove the claimant's external fixator and applied a short leg cast. Thereafter, Dr. Prinz prescribed physical therapy for the claimant and ordered a bone stimulator to help his bone heal. He ordered the claimant to remain off work until further notice. As early as March 7, 2000, Dr. Prinz noted that the claimant would be unable to return to his old job as it was unlikely that he would be able to stand for eight hours a day or walk without a walker.

According to Dr. Prinz, the claimant had not reached maximum medical improvement (MMI) as of April 1, 2000. On May 15, 2000, Dr. Prinz noted that the claimant needed to wear a walker boot, was required to use a walker, and was still in significant pain. Dr. Prinz's notes of June 19, 2000, state that the claimant was making slow progress, needed a walker, and could not return to work.

At the request of Shepard, the claimant was examined by Dr. Thomas G. Colmey on June 20, 2000. In a report dated that same day, Dr. Colmey noted that the claimant gave a history of having injured his ankle when he fell over a box at work. After examining the claimant and reviewing an X ray of his left lower leg and ankle, Dr. Colmey recorded a clinical impression of "residuals of fracture left tibia and ankle" and commented that the claimant appeared to be doing relatively well with regard to ambulation, although he was still maintained in a brace and had to use a walker to alleviate discomfort and provide stability.

When deposed on June 29, 2000, Dr. Prinz stated that the claimant had not yet reached MMI and he did not believe that the claimant would reach MMI before October 2000. Dr. Prinz opined that the claimant was permanently disabled and would never be able to return to his job. He testified that the claimant might be able to do some sedentary work in the future, but could not fix a date when the claimant might be able to return to work. Dr. Prinz stated that transportation to and from work might present a problem, as the claimant was at risk of injury even traveling to scheduled medical visits. Dr. Prinz thought it would be unusual to provide vocational rehabilitation for someone of the claimant's age. Finally, Dr. Prinz testified as to the reasonableness of the charges for medical services rendered to the claimant by himself and several other medical providers.

In a letter dated September 20, 2000, Dr. Prinz wrote that the claimant had some permanent loss of function, that he would not be able to return to delicatessen work, and that he was not sure whether the claimant was an appropriate candidate for vocational rehabilitation.

At the arbitration hearing held on April 25, 2001, the claimant admitted that the payroll checks he received while working came from Shepard as did the W-2 forms that he received at the end of each year.

After the conclusion of the arbitration hearings, the arbitrator issued a decision on June 15, 2001, in which he dismissed all of the respondents except for Shepard. In that decision, the arbitrator found that the claimant sustained accidental injuries arising out of and in the scope of his employment with Shepard and awarded the claimant temporary total disability (TTD) benefits for a period of 35²/₇ weeks, and permanent partial disability (PPD) benefits for a period of 120 weeks by reason of the claimant having suffered a 60% loss of use of his left leg. In addition, the arbitrator ordered Shepard to pay $12,457.93 for medical expenses incurred by the claimant.

Both the claimant and Shepard sought a review of the arbitrator's decision before the Commission. On June 28, 2002, the Commission issued a decision, concurred in by Commissioners Madigan and Kinnaman, with a dissenting opinion filed by Commissioner Gilgas. However, on September 27, 2002, that decision was recalled by the Commission pursuant to section 19(f) of the Act (820 ILCS 305/19(f) (West 1998)), and a "Corrected Decision" was filed in its place. The Corrected Decision was authored by Commissioner Kinnaman, with a special concurring opinion filed by Commissioner Rink. Commissioner Gilgis again filed a dissenting opinion.

In its Corrected Decision, the Commission modified the arbitrator's award, finding that the claimant was entitled to TTD benefits for a period of 60⁵/₇ weeks, that he had established that he was permanently and totally disabled, and that he was, therefore, entitled to an award of $233.33 per week for life beginning on November 30, 2000. After determining the credits to which "the respondent" was entitled and ordering it to hold the claimant harmless and defend him from any claims for the payment of medical expenses he might incur as a result of his work-related injuries, the Commission affirmed and adopted the arbitrator's findings as to all other issues.

Shepard sought judicial review of the Commission's Corrected Decision in the circuit court of Cook County. On February 26, 2003, the circuit court entered an order confirming that decision and, thereafter, Shepard filed this appeal.

For its first issue on appeal, Shepard argues that the Commission's Corrected Decision is void because the appointment of Paul Rink as a commissioner was invalid. In support of its argument in this regard, Shepard submitted certain documentary evidence to the circuit court establishing the following.

Robert Madigan was appointed as a Commissioner of the Illinois

Industrial Commission for a term commencing on the third Monday in January 2001 and ending on January 17, 2005. When Madigan resigned, then-Governor George Ryan sent a letter to the Illinois Secretary of State dated July 3, 2002, stating that, effective July 8, 2002, he made a temporary appointment of Paul Rink to the position formerly held by Commissioner Madigan "until a permanent appointment can be made." The letter also stated that Rink's appointment would expire on December 31, 2002. On that same day, Governor Ryan issued another letter to the Secretary of State appointing Diane Ford as a commissioner, effective January 17, 2003, to the position held by Rink. Both appointments were transmitted to the Senate on November 21, 2002, and approved on December 4, 2002.

Shepard argues that the appointment of Rink as a commissioner for a term less than the unexpired term of Commissioner Madigan was in derogation of section 13(b) of the Act (820 ILCS 305/13(b) (West 2000)) and, as a consequence, void. Although we agree that Governor Ryan had no statutory authority to limit Rink's term of office to less than Commissioner Madigan's unexpired term, we do not agree that Rink's temporary appointment was void.

Section 13 of the Act provides in relevant part, as follows:

"The Industrial Commission shall administer this Act.

The members shall be appointed by the Governor, with the advice and consent of the Senate, as follows:

\*\*\*

(b) Members shall \*\*\* be appointed to hold office for terms of 4 years from the third Monday in January of the year of their appointment, and until their successors are appointed and qualified. \*\*\*

\*\*\*

In case of a vacancy in the office of a Commissioner during the recess of the Senate, the Governor shall make a temporary appointment until the next meeting of the Senate, when he shall nominate some person to fill such office. Any person so nominated who is confirmed by the Senate shall hold office during the remainder of the term and until his successor is appointed and qualified." 820 ILCS 305/13 (West 2000).

Shepard makes no argument that the Senate was not in recess on July 3, 2002, when Governor Ryan made the temporary appointment of Rink as a commissioner, nor does it, or could it, argue that any nomination to fill Commissioner Madigan's position was transmitted to the Senate and approved prior to September 27, 2002, the date upon which Rink concurred in the Corrected Decision entered in this case. Rather, Shepard's attack on the validity of Rink's appointment as a commissioner appears to focus on his nomination and confirma-

tion for a term less than the unexpired term of Commissioner Madigan. We need not address the argument (but see *Ford v. Blagojevich*, 260 F. Supp. 2d 700 (C.D. Ill. 2003)), as it has little relevance to the question of the validity of Rink's temporary appointment.

■ When Rink concurred in the Corrected Decision in this case, he was discharging the duties of a commissioner under a temporary appointment. With the resignation of Commissioner Madigan, Governor Ryan exercised his statutory authority to temporarily appoint Rink to the vacant position. See 820 ILCS 305/13(b) (West 2000). Although the July 3, 2002, letter reflecting the temporary appointment of Rink which was transmitted to the Secretary of State reflects an expiration date of December 31, 2002, it clearly states that it was a temporary appointment "until a permanent appointment can be made." In the context of a temporary appointment, any reference to a specific expiration date is pure surplus verbiage as the Act specifies that the Governor may make the appointment until the next meeting of the Senate, when he is required to nominate someone to fill the office. See 820 ILCS 305/13(b) (West 2000).

We believe that Rink's temporary appointment as a commissioner was in compliance with the provisions of section 13(b) of the Act and in all respects valid. Consequently, we reject Shepard's attack on the validity of the Commission's Corrected Decision.

■ Next, Shepard argues that the Commission's finding that the claimant sustained accidental injuries arising out of and in the course of his employment is against the manifest weight of the evidence. Distilled to its finest, however, this argument is little more than an attack on the credibility of the claimant and his witnesses.

It is the function of the Commission to decide questions of fact, judge the credibility of witnesses, and resolve conflicting evidence. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980). The Commission's determination on a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

In this case, the Commission found the claimant credible when he testified that he suffered accidental injuries as a consequence of having tripped over a box while working. Additionally, the Commission found Alport's testimony concerning the manner in which the claimant was injured to be inconsistent and unsupported by any other witness' testimony. Whether this or any other court might have reached

the same conclusion is not the test of whether the Commission's determination on the issue is against the manifest weight of the evidence. Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's determination. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450, 440 N.E.2d 90 (1982). We cannot say that no rational trier of fact could have found the claimant credible or that an opposite conclusion is clearly apparent from the evidence in the record. Relying on the testimony of the claimant as to the manner in which he broke his leg, the Commission's finding that the claimant sustained accidental injuries arising out of and in the course of his employment by Shepard is not against the manifest weight of the evidence.

■ For its next argument, Shepard asserts that the Commission's finding that the claimant is permanently and totally disabled is against the manifest weight of the evidence and contrary to law. According to Shepard, the claimant failed to prove that his condition was in fact permanent.

A person is totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists. *A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n*, 77 Ill. 2d 482, 487, 397 N.E.2d 804 (1979). The claimant need not, however, show that he has been reduced to total physical incapacity before being entitled to a permanent and total disability award. *Interlake, Inc. v. Industrial Comm'n*, 86 Ill. 2d 168, 176, 427 N.E.2d 103 (1981). In determining whether a claimant is totally and permanently disabled, the Commission considers his age, experience, training, and education. *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 362, 376 N.E.2d 206 (1978). The question of whether a claimant is totally and permanently disabled is one of fact for the Commission to resolve, and its determination on this matter will not be disturbed on appeal unless contrary to the manifest weight of the evidence. *Ceco Corp. v. Industrial Comm'n*, 95 Ill. 2d 278, 288-89, 447 N.E.2d 842 (1983).

At the time of the arbitration hearing, the claimant was 85 years old. He has a high school education and has worked in delicatessens from 1947 until the time of his injury. The claimant testified that he can only stand for 5 to 10 minutes without the use of a walker and from 15 to 20 minutes while using a walker. His treating physician, Dr. Prinz, opined that the claimant was permanently disabled and would never be able to return to his old job. Although Dr. Prinz testified that the claimant might be able to do sedentary work at some time in the future, he qualified his remark by stating that transporting the claimant to and from work might present a problem and that

he did not believe that the claimant was a good candidate for vocational rehabilitation.

Taking into account the claimant's injury, his age, education, work history, and the opinions of his treating physician, we believe that there is sufficient evidence in the record to support a conclusion that the claimant is incapable of performing any services for which a stable labor market exists. Further, Shepard failed to introduce any evidence to show that the claimant was capable of engaging in some type of regular and continuous employment. Consequently, the Commission's finding that the claimant is totally and permanently disabled is not against the manifest weight of the evidence, despite the fact that the claimant failed to introduce evidence that work was not available to him. See *E.R. Moore Co.*, 71 Ill. 2d at 362-63.

■ Shepard also contends that the claimant failed to lay a proper foundation for the admission into evidence of bills for medical services and failed to introduce evidence establishing the necessity for the services rendered. As a consequence, Shepard argues that the Commission's award of benefits under section 8(a) of the Act (820 ILCS 305/8(a) (West 2000)) is against the manifest weight of the evidence.

Resolution of this issue has been made somewhat difficult by reason of Shepard's failure to include in the appendix to its brief a table of contents, with page references, of the record on appeal as required by Supreme Court Rule 342(a) (155 Ill. 2d R. 342(a)), a record which consists of 8 volumes containing in excess of 1,900 pages; and the claimant's failure to meaningfully address the issue in his brief.

The claimant introduced into evidence, over Shepard's objection, exhibits in support of the following medical expenses: $44,422.08 to Gottlieb Hospital; $6,761 to Dr. Prinz; $3,950 to E.B.I Bone Healing System; $2,282 to Dr. Farhi; $494 to Medical Imaging Professionals; and $160 to Special Care Home Orthopedics. Dr. Prinz testified to the reasonableness and necessity of the charges and services rendered by himself, E.B.I Bone Healing System, Dr. Farhi, Medical Imaging Professionals, and Special Care Home Orthopedics. The bill from Gottlieb Hospital is clearly for medical services rendered in connection with the claimant's hospitalization and treatment immediately following his injury.

The arbitrator and the Commission ordered Shepard to pay $12,457.93 for necessary medical care and services provided to the claimant by Dr. Prinz, E.B.I Bone Healing System, Medical Imaging Professionals, Special Care Home Orthopedics, and the balance of Dr. Farhi's bill which had not been paid by Medicare. In addition, the Commission ordered Shepard to hold the claimant harmless and defend him against any claims for reimbursement for medical expenses

paid on his behalf by reason of the injuries he sustained on October 2, 1999. These potential claims include the payment of Gottlieb Hospital's bill and a portion of Dr. Farhi's bill.

Under section 8(a) of the Act, an employer is required to provide or pay for "all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury" of an employee. 820 ILCS 305/8(a) (West 2000). As is the case with any element of a workers' compensation claim, the claimant bears the burden of proving, by a preponderance of the evidence, his entitlement to an award of medical expenses under section 8(a). *Jewel Cos. v. Industrial Comm'n*, 125 Ill. App. 3d 92, 94, 465 N.E.2d 935 (1984). Questions as to the reasonableness of medical charges or their causal relationship to a work-related injury are questions of fact to be resolved by the Commission, and its resolution of such matters will not be disturbed on review unless against the manifest weight of the evidence. *Ingalls Memorial Hospital v. Industrial Comm'n*, 241 Ill. App. 3d 710, 717, 609 N.E.2d 775 (1993).

In light of Dr. Prinz's testimony, we are unable to find that the Commission's order that Shepard pay $12,457.93 for necessary medical care and services provided to the claimant by Dr. Prinz, E.B.I Bone Healing System, Medical Imaging Professionals, Special Care Home Orthopedics, and the balance of Dr. Farhi's bill is against the manifest weight of the evidence. This is especially true in light of the fact that Shepard failed to introduce any evidence to suggest that the services rendered by any of these providers was not necessary or that their charges were not reasonable and customary. See *Ingalls Memorial Hospital*, 241 Ill. App. 3d at 718.

Additionally, we find no error in that portion of the Commission's Corrected Decision which ordered Shepard to hold the claimant harmless and defend him against any claims for reimbursement for medical expenses paid on his behalf by reason of the injuries he sustained on October 2, 1999. It is clear from the testimony of the claimant, Alport, Palacios, Nicoski and Dr. Prinz that the claimant was taken to Gottlieb Hospital on the day of his injury, received medical attention there and was hospitalized, and that the medical services the claimant received at Gottlieb Hospital were causally related to his accident on October 2, 1999. It is true, as Shepard contends, that the claimant totally failed to lay a proper foundation for the admission of the Gottlieb Hospital bill into evidence. The claimant never testified concerning that bill, and Dr. Prinz, although asked, declined to render an opinion as to whether the charges set forth therein were usual and

customary. However, the Commission did not order Shepard to pay the Gottlieb Hospital bill; it only ordered Shepard to defend and hold the claimant harmless against any claim for reimbursement for medical bills paid on his behalf by reason of his work-related injuries. Clearly, the payment of any such bills is Shepard's obligation under section 8(a) of the Act. If a claim is made against the claimant for reimbursement for sums paid to Gottlieb Hospital or any other entity for medical services incurred by reason of his work-related injury, Shepard, in its defense of the claimant, would be provided a forum to contest the necessity for any services rendered and the reasonableness of the charges. In this case, the Commission has ordered no more than section 8(a) of the Act requires.

■ As its final request for relief, Shepard moves this court to modify the judgment of the circuit court to reflect that it is the only party plaintiff in this cause and the only party ordered by the Commission to pay benefits to the claimant. Shepard asserts that the arbitrator dismissed all of the other original respondents named in the claimant's application for adjustment of claim and that the Commission affirmed and adopted that portion of the arbitrator's decision. As a consequence, Shepard contends that the circuit court's reference to Alport as the party bringing the action for judicial review is in error as is the reference in its judgment order to the claimant having been injured during the course of his employment by Alport.

The claimant asserts that Alport never purchased workers' compensation insurance naming himself or any of "his corporations" as insured employers, nor did he or Shepard apply with the Commission for approval to operate as a self-insured employer as provided in section 4(a) of the Act (820 ILCS 305/4(a) (West 2000)). The claimant alleges that the Commission issued an order requiring that "Mel Park Village Mart" purchase an insurance policy, and contends that, "[t]o secure payment of the award by the uninsured employer, Jerome S. Alport (sole officer and director of his uninsured corporations), the Commission rejected the appellants' petition to limit liability for payment of the award to the defunct corporations, Max Shepard, Inc., d/b/a Mel Park Village Mart."

A resolution of this issue requires a brief statement of facts gleaned from the record. As noted earlier, the claimant admitted in his testimony at the arbitration hearing that the payroll checks he received while working came from Shepard as did the W-2 forms he received at the end of each year. Contrary to the claimant's assertions, the Commission ordered Shepard to obtain workers' compensation insurance, not Alport. The "Insurance Compliance Settlement Agreement" resolving the matter states that it was entered into between

the Commission and "the EMPLOYER, MAX SHEPARD, INC[.], d/b/a MEL-PARK VILLAGE MART." Further, Shepard is absolutely correct when it states that the arbitrator granted a motion to dismiss all of the respondents named in the claimant's application for adjustment of claim except for Shepard, and that the Commission in its Corrected Decision neither modified nor overruled the arbitrator's decision in this regard, but adopted and affirmed it. It is true that the Commission's Corrected Decision speaks only in terms of the arbitrator having found that the claimant suffered accidental injuries arising out of and in the course of his employment with the "Respondent" and, thereafter, refers only to the "Respondent" being liable for certain specified benefits without ever identifying the respondent by name. However, the arbitrator's decision specifically states that "[t]he motion to dismiss all Respondents except Max Shepard, Inc. is granted" and, as a consequence and in the absence of any action by the Commission to reverse, vacate, or modify the arbitrator's ruling in this regard, Shepard was the only remaining party respondent at the time that the Commission issued its Corrected Decision and the Commission specifically found that the claimant "worked for Max Shepard, Inc." Based upon the procedural history in this case, the findings of the Commission, and the fact that the only evidence introduced at the arbitration hearing established that the claimant was an employee of Shepard, we conclude that the party against whom the Commission entered its award is Shepard. Our conclusion is also supported by well-settled law of which the Commission is presumptively aware; namely, that the Act does not provide for individual liability against corporate officers and directors, and the Commission lacks the power to pierce the corporate veil even in circumstances where a corporate employer does not, or cannot, pay an award. *JMH Properties, Inc. v. Industrial Comm'n*, 332 Ill. App. 3d 831, 832-33, 773 N.E.2d 736 (2002). Additionally, the record reflects that Shepard is the sole plaintiff on whose behalf the petition for judicial review was filed in the circuit court of Cook County.

Based upon our review of the record, we find that the circuit court incorrectly referred to Alport as: the party who filed an "appeal" (action for judicial review) from the Commission's decision; the party employing the claimant at the time of his injury; and the party making various arguments attacking the Commission's decision. Shepard is the plaintiff in the underlying action, Shepard was the claimant's employer on the date that he suffered the accidental injuries for which benefits under the Act were sought, and Shepard is the only party ordered by the Commission in its Corrected Decision to pay benefits to the claimant. Consequently, the circuit court's judgment is hereby modified to so reflect.

For the foregoing reasons, we affirm the judgment of the circuit court, as modified, confirming the Commission's Corrected Decision.

Affirmed as modified.

McCULLOUGH, P.J., and CALLUM, HOLDRIDGE, and GOLD-ENHERSH, JJ., concur.